PREHM et al., Appellants, v. PORTER et al.

### Division One, November 19, 1901.

1. **Pleading: AMENDMENT: NEW CAUSE: NEW PARTY.** A petition not originally framed in the alternative may, by amendment, be converted into one of that character, but this does not authorize the introduction of claims for relief inconsistent with those originally stated, or founded on a different state of facts, which if true, would entitle plaintiff to relief of a wholly different character, and against different parties occupying wholly different relations to plaintiff and to the property sought to be affected by the decree. The petition can not be so amended as to amount to the institution of a new or wholly different suit.

2. ———: ———: **FILING AFTER HEARING: PRACTICE.** Where it is apparent that the filing of an amended petition, after the trial has closed and the court has suggested what the decree must be, would require a reopening of the case and the taking of additional testimony, it will not be held on appeal that the court abused its discretion in refusing to permit the amended petition to be filed.

Appeal from Jasper Circuit Court.—*Hon. M. G. McGregor, Special Judge.*

AFFIRMED.

*W. F. Sapp, L. P. Cunningham* and *Thomas Dolan* for appellants.

"The court found from the evidence that plaintiffs and defendants, Oliver and Frazee, were partners and that A. J. Oliver was acting for the others as their superintendent, and defendants, Carney and Aldrich, were their sublicensees, working under them, and could not acquire a new relation to the property antagonistic to the plaintiffs," or in other words, if they acquired any rights in or to the said land from Porter and others it would inure to the plaintiffs. According to the familiar rule: "One member of a partnership can not, during its existence, without the knowledge and consent of his co-part-

ners, take a renewal lease, in his own name or otherwise, for his own benefit and to the exclusion of his fellows, of premises leased by the firm or occupied by them as tenants. A lease so taken by a partner inures to the benefit of the whole firm; *it is regarded* as a continuation of or as 'grafted on' the lease; a trust will be impressed upon the leasehold estate; equity will treat the partner as a trustee for the firm, and if necessary and possible will compel him to assign the renewal lease to it." 2 Pomeroy, Equity Juris., sec. 1050. Prior to bringing the suit, plaintiffs found the defendants, whose support and sympathy they had a right to expect, opposed to them and acting in conjunction with the owners of the land to defeat their rights. Suspecting but not being fully apprised of their interests as co-partners and licensees, the plaintiffs brought the only action that would lie, viz.: to compel the owners to make a lease to them, under the contract, and joined as co-defendants those hostiles in their own camp, alleging that they claimed some interest in the property adverse to the plaintiffs. When the evidence developed the facts found by the court, plaintiffs simply presented their amended petition in which they set up such facts and prayed for appropriate relief. See amended and supplemental petition. The court, in conclusion of law number 4, holds that such matter would not be proper in reply. It may not be permissible in a reply, but the right to so amend after the evidence is in, is expressly granted by the statute. R. S. 1899, sec. 663; Jones v. Whitsett, 79 Mo. 188; Welday v. Jones, 79 Mo. 170; Carr v. Moss, 87 Mo. 447; Wetzell & Griffith v. Wagoner, 41 Mo. App. 509; Stewart v. Glenn, 58 Mo. 482; Morrison v. Harrington, 120 Mo. 665; Robertson v. Spg. Co., 21 Mo. 633. The court had jurisdiction of the subject-matter and all the parties concerned before it, and should have granted relief to avoid a multiplicity of suits. As Judge SHERWOOD says, in Real Estate Saving Inst. v. Collonious, 63 Mo. 296: "It will not declare that a party has been defrauded of his rights and then dismiss him with a bland permission to

assert, at new cost and further delay, those rights in another forum." Real Estate Sav. Ins. v. Collonious, 63 Mo. 295; Corby v. Bean, 44 Mo. 379; Rosier v. Griffith, 31 Mo. 171; Primm v. Raboteau, 56 Mo. 407; McDaniels v. Lee, 37 Mo. 204. The trial court found that appellants should recover from the respondents, but by refusing to permit the filing of the amended and supplemental petition virtually said to appellants: "You can have no relief in this suit. The evidence shows you are entitled to relief but because this relief was not prayed for in original petition, you must go out of court and begin all over again."

*J. W. McAntire* for respondents.

The plaintiffs are not entitled to recover in the action for specific performance, because they have failed to show that they performed the whole of that which they contracted to do, and it is held by our courts that it will not be sufficient that they have performed part of it. Pomeroy on Specific Performance, sec. 334; Rosenbarger v. Jones, 118 Mo. 559; Jones v. Roberts, 6 Cal. 187. Porter made the time within which certain things should be performed, an essential element to the contract. He had a right to wait until January, 1898, to see whether the defendants would comply with the terms of the contract or not. As they had not complied with the terms of the contract up to that time, he had the right to forfeit and to take possession. Glass v. Lowe, 103 Mo. 514; Secret Service Co. v. Gill-Alexander Mfg. Co., 125 Mo. 141. Porter had the right to enter upon said land without demand, but he had a meeting with all the parties at the Keystone Hotel, and informed them that they had failed to comply with the terms and conditions of the contract, and refused to execute them a lease, and informed them that if they would give him any assurance that they would mine the ground in good faith, that he would give to them a contract on one twenty acres of the land. This they

all declined to do except Oliver and Frazee.   Oliver and Frazee tried to get the plaintiffs to join with them in taking a new contract.   They refused.    They all conceded they were not entitled to a lease.   It was the duty of the licensees as they were, to observe their covenants, and the very giving of the new contracts to other people was a sufficient declaration of forfeiture, because it was antagonistic to the claims of the plaintiffs. Avery v. Railroad, 113 Mo. 561; Ellis v. Kyger, 90 Mo. 606; O'Brien v. Wagner, 94 Mo. 93; Kirk v. Matere, 140 Mo. 35. Equity requires substantial compliance with a contract sought to be specifically enforced; and where the party seeking such a lease appears to have inexcusably failed to observe the contract on his own part, a court of equity will not decree specific performance at his instance.   It is the maxim of equity that he who asks the benefits must bear the burdens of an agreement. Secret Service Co. v. Gill-Alexander Mfg. Co., supra.   This is an agreement for a lease.   Where the intended lessee in such a case omits to do acts in reference to the land which would work a forfeiture of the lease if it had been executed, or if he does, or omits to do acts which would amount to a breach of conditions to be inserted in the instrument, and for which breach the lessor would have the right to re-entrance, he can not enforce specific performance of the agreement against the lessor.   Pomeroy on Specific Performance, sec. 355; Kirk v. Matere, 140 Mo. 23; Avery v. Railroad, 113 Mo. 561; Ellis v. Kyger, 90 Mo. 606; Glass v. Rowe, supra.   In this case the Supreme Court holds that the thing specified in the contract to be done must be performed strictly as specified in the contract, and further holds that where there is a want of mutuality in the contract, specific performance can not be had.   A contract, in order to be mutual, must be such that it might, at the time it was entered into, have been enforced by either of the parties against the other.    Glass v. Rowe, 103 Mo. 539; Jones v. Williams, 139 Mo. 87; Hollmann v. Conlon, 143 Mo. 369.

ROBINSON, J.—Plaintiffs, as the assignees of one Joseph Fahlenbock, began suit to have enforced specific performance of the following contract:

"Joplin, Missouri, November 23, 1896.

"We hereby agree to give Jos. Fahlenbock and others a lease on the southwest forty of our one hundred and sixty acre tract in section 7, township 27, range 33, Jasper county, Missouri, on Short Creek, providing he sinks one shaft on each ten acres of the forty acre tract. Two of the shafts are to be started by December 1, 1896, and two more shafts are to be started within ninety days, or by March 1, 1897. Said shafts are to be sunk to a depth of one hundred feet or until pay ore is struck by January 1, 1898, and the said Fahlenbock and associates are to put in sufficient machinery to drain said ground. Work must be continuous unless permission is granted to suspend same. The terms and conditions of this lease are to be the same as form and conditions of Rex Mining & Smelting Company's leases. Royalty to be fifteen per cent on all ores raised. He, Jos. Fahlenbock, to pay the state and county taxes on said forty acres. Now, if above conditions are complied with, we agree to give lease to said Jos. Fahlenbock on April 15, 1897; otherwise, this contract is null and void.

> "THOS. CONNOR,
> "GILBERT BARBEE,
> "THOS. HEIST,
>> "By E. D. PORTER,
> "E. D. PORTER,
> "JOS. FAHLENBOCK."

The petition names as defendants therein not only the owners of the land, who signed the contract with their assignor (Joseph Fahlenbock), but joined as co-defendants A. J. Oliver, John M. Frazee, J. N. Carney and Joseph A. Aldrich, without disclosing why they were so joined, except by the simple alle-

gation "that defendants Oliver, Frazee, Carney and Aldrich, as plaintiffs are informed and therefore allege, claim some interest in said land adverse to plaintiffs, the precise nature whereof the plaintiffs are not informed, but pray that same be set up by said defendants that the same may be adjudicated and determined herein." The petition then closes with the following prayer: "That the defendants Carter, Barbee, Connor and Heist, may be required to execute and deliver said lease to plaintiffs, and that the respective rights and shares of the parties therein and thereto may be determined and adjudged and for all other proper relief in the premises, and for general relief and for cost of suit."

To this petition the defendants Oliver and Frazee filed their separate answer denying each and every allegation therein contained and further answering say that they were originally interested with plaintiffs in an effort to mine the land described therein, but that plaintiffs refused to comply with the terms and conditions of the contract of November 23, 1896, given to their assignor Fahlenbock by their co-defendants, Porter, Barbee, Connor and Heist, the owners of said land; that said contract was declared forfeited by said Porter and his associates owning the land, and possession thereof taken by said owner, who afterwards on the twenty-fourth day of March, 1898, made to the defendants another contract giving to them the right to mine and operate on the east twenty acres of said land upon terms and conditions in many respects similar to the terms and conditions of the contract of November 23, 1896; that they have since held the possession thereof conducting mining operations thereon at their own expense wholly independent of the plaintiffs, and of the contract of November 23, 1896. The defendants Carney and Aldrich for their separate answer, after denying generally the allegations of the petition, say: "That one of the owners of said land, E. D. Porter, represented to them that the parties who had originally had a contract upon said ground had failed to comply with the conditions thereof,

and that they had forfeited all rights, if any they had, on said land, and that the same was not leased and there was no incumbrances on the said land.    That these defendants relying upon and believing such statement in good faith, being upon said land, entered into a contract with said E. D. Porter for a lease upon the west half of said forty acre tract of land, described in plaintiffs' petition, and on account of obtaining such contract, they, in good faith, put forth greater efforts to develop the said land than they would have done as mere licensees. That they sunk shafts deeper, excavated drifts, and put machinery upon said land, and have expended in good faith a large sum of money in excess of what they would have expended had they been merely licensees, to-wit, the sum of $2,000, under their contract to mine said land under the said E. D. Porter and other owners thereof. The defendants say that they had no knowledge of any right of the said plaintiffs to the possession of said land or to obtain a lease thereto, if they had any such rights.    Wherefore, defendants having fully answered, ask judgment for costs."

For his separate answer Edward D. Porter denied each and every allegation in plaintiff's petition contained except that he admits he executed and delivered the contract of November 23, 1896, mentioned in plaintiffs' petition, to Joseph Fahlenbock for himself and the defendants Barbee, Connor and Heist with whom he was associated in the ownership of the land in question.    Further answering he alleged that neither the said Joseph Fahlenbock nor any one associated with him, nor the plaintiff herein, complied with the terms and conditions of the contract of November 23, 1896, but have wholly failed therein (detailing the particulars wherein they failed) and that on account of said failure and refusal to perform the conditions of said contract he declared to be forfeited all rights, if any, the plaintiff ever had, to remain in the possession of said land, or to obtain a lease upon same as provided by contract of November 23, 1896; that upon the repeated refusal of plaintiffs and

those associated with them, to comply with the terms and conditions of said contract of November 23, 1896, upon their part, he took possession of the land named therein and has since then put other parties in possession thereof under mining contracts and that said parties now hold and have the possession of said land, and have expended large sums of money in prospecting and developing same for mining purposes, "and that it would be inequitable and unjust, after the failure on the part of the plaintiffs and those under whom they claim, to comply with the conditions of the original contract, to grant to them the relief sought, or any other relief." The defendants, Barbee, Connor and Heist for their separate answer, after a general denial of each and every allegation of plaintiffs' petition, say "that the proposed contract set out therein is one which was not to be performed within one year from the making thereof, and that said alleged agreement was not in writing nor was any note or memorandum thereof made in writing or subscribed to by defendant and that no person was authorized by them or either of them by writing so to do."

To these separate answers the plaintiffs filed their replies, the particulars of which it is unnecessary to mention now, further than to say that each reply closed with the prayer for the relief as asked in their petition. Upon the pleadings thus made up, without objection from either party, the cause proceeded to a hearing, and testimony was taken upon all the issues presented therein, and after the judge had expressed from the bench what his finding would be, but before the findings of facts by the court and its conclusions of law thereon had been written up, and before the judgment of the court was formally announced or entry of record, the plaintiffs applied to and moved the court for leave to file the following as a supplemental or amended petition in the clause (captions are omitted):

"FIRST COUNT.

"Plaintiffs for their amended and supplemental petition state that on the twenty-third day of November, 1896, the said defendants Connor, Barbee, Heist and Porter, entered into a written contract with one Joseph Fahlenbock, which contract was and is in words and figures as follows:

"'Joplin, Missouri, November 23, 1896.

"'We hereby agree to give Joseph Fahlenbock and others a lease on the southwest forty of our one hundred and sixty acre tract in section 7, township 27, range 33, Jasper county, Missouri, on Short Creek, providing he sinks one shaft on each ten acres of the forty acre tract. Two of the shafts are to be started by December 1, 1896, and two more shafts are to be started within ninety days or by March 1, 1897. Said shafts are to be sunk to a depth of one hundred feet or until pay ore is struck by January 1, 1898, and the said Fahlenbock and associates are to put in sufficient machinery to drain said ground. Work must be continuous unless permission is granted to suspend same. The terms and conditions of this lease is to be the same as form and conditions of Rex Mining & Smelting Company's leases. Royalty to be fifteen per cent on all ores raised. He, Jos. Fahlenbock, to pay the state and county taxes on said forty acres. Now if above conditions are complied with we agree to give lease to said Jos. Fahlenbock on April 15, 1897, otherwise, this contract is null and void.

"'THOS. CONNOR,
"'GILBERT BARBEE,
"'THOMAS HEIST,
"'By E. D. PORTER, Agent,
"'JOSEPH FAHLENBOCK.'

"Which said contract was fully authorized and has been fully ratified and confirmed by said Connor, Barbee, Heist and Porter, the owners of said land.

"That the land referred to and mentioned in said contract is properly described as the north half of lot 1 of the southwest quarter, but sometimes described as the northwest quarter of the southwest quarter of section seven, township twenty-seven, of range thirty-three, forty acres, more or less, and situate in Jasper county and State of Missouri, and that the said lease therein agreed to be made and delivered was and is to be in form and substance like the annexed form of the Rex Mining & Smelting Company, which is hereto attached as an exhibit.

"That said written contract was by said Joseph Fahlenbock, before the commencement of this suit, for value, duly assigned and transferred to the plaintiffs herein and to defendants Oliver and Frazee, and by such assignment, transfer and mesne conveyance they hold and own said contract and all rights thereunder, in the following proportions:   Said Prehm 12-48; said Elsner, 3-48; said Seiler 6-48; and August Fahlenbock 6-48; and said defendants Oliver 13-48, and Frazee 8-48, as partners to each other.

"Plaintiffs further state that they and said Oliver and Frazee and the persons under whom they claim, entered upon, took and held and now have actual possession of said described land, under and by virtue of the terms of said contract, and duly performed each and all of the conditions of said contract by them to be performed, except as to the paying of the taxes upon said described land, and plaintiffs endeavored to pay such taxes, but found the same had been paid by said Connor, Barbee, Heist and Porter, as owners of said land; and then offered to repay them such taxes with all legal interest thereon, and plaintiffs now offer to repay them such taxes so paid by them, with six per cent interest per annum thereon, and to continue paying the taxes as they shall hereafter fall due, according to said contract.

"Plaintiffs state and allege that in all substantial and material particulars and conditions the said contract has been complied with and performed by the said plaintiffs, and said Oliver

and Frazee and the persons under whom they claim, and that they are in right and justice entitled to have said lease mentioned and referred to in said contract executed and delivered to them and that they have heretofore demanded the same, which has been and still is refused by said defendants Porter, Barbee, Connor and Heist.

"That the defendants have received and appropriated and are continuing to receive and appropriate royalties and profits from said land belonging to the plaintiffs, the amount of which the plaintiffs were not informed at the commencement of this suit and the same was wholly within the knowledge of the defendants, and defendants threaten to thus continue, and wherefore, the plaintiffs pray for an accounting of such royalties and profits as more fully set forth in the second and third counts of this petition, and that on final hearing they may have judgment in their favor and against the defendants for the same.

"That defendants Oliver, Frazee, Carney and Aldrich, as plaintiffs are informed and, therefore, allege, claim some interest in said land adverse to the plaintiffs, the precise nature whereof the plaintiffs were not informed at the commencement of this suit but the same has been discovered upon the trial of this suit but plaintiffs pray that the same may be adjudicated and determined herein, as is more fully set forth and prayed for in the second and third counts of this petition.

"That defendants Heist, Oliver, Frazee and Carney are not residents of the State of Missouri, and plaintiffs pray that they may be informed of the commencement, object and general nature of this suit by publication in a newspaper according to law.

"Wherefore, in consideration of the premises, the plaintiffs pray that the defendants Porter, Barbee, Connor and Heist may be required to execute and deliver said lease to the plaintiffs, and that the respective rights and shares of the parties therein and thereto, may be determined and adjudged and if

for any reason the same can not be adjudged and decreed by the court, then the said contract may be declared to be in full force and continuing, and that if the court should find and decide that the plaintiffs, with said defendants Oliver and Frazee, are not yet entitled to the lease provided to be made according to the terms of said contract, then that they may be permitted to go on thereunder, carry out and perform said contract according to its terms, be relieved from the forfeiture thereof asserted by the defendants, because such forfeiture is illegal, unjust and not authorized, and that any new contract or contracts for a lease or leases to defendants Oliver and Frazee, Carney and Aldrich or either of them, may be adjudged and decreed as based upon said contract of November 23, 1896, and an extension thereof, to inure to the benefit of said partnership, and for all other proper relief in the premises, and for general relief and for costs of suit.

### SECOND COUNT.

"Plaintiffs further state that since the filing of the original petition herein, and the commencement of this suit and the filing of the defendants' answers herein, and hearing the evidence of defendants Porter, Frazee and Oliver, the plaintiffs have for the first time learned and discovered that the defendant Oliver obtained from the defendants Connor, Barbee, Porter and Heist, who were the sole owners of the said described land, a contract, which is in words and figures as follows:

"'March 24, 1898.

"'For and in consideration of one dollar to us in hand paid, the receipt of which is hereby acknowledged, we this day give A. J. Oliver and associates a contract for lease on the following described property, situated in Jasper county, State of Missouri: All of the east half of the northeast quarter of the

southeast quarter, section 7, township 27, range 33, containing 20 acres, more or less. The conditions of this contract are as follows: The said A. J. Oliver and associates are to comply with the same terms and conditions of the lease given by the Rex Mining & Smelting Company, a copy of which is hereby attached as a part of the contract, and to begin at once in sinking of one shaft on each north and south ten acres of the above-described 20 acres, and to sink said shaft to depth of one hundred feet within six months from date of this contract, unless pay ore be struck and worked at a less level, and to put in and keep in operation sufficient machinery and pumps to thoroughly drain said ground and pay over to us with statement each week fifteen per cent royalty on all ores raised on said ground.

" 'If above conditions are complied with we hereby agree to give A. J. Oliver and associates a lease on the above-described 20-acre tract of land for a period of ten years from date of this contract, to be subject to same terms and conditions, excepting royalty, as Rex Mining & Smelting Company's leases, a copy of which is hereto attached.

" 'If all the above conditions are not complied with within time specified, then this contract shall be null and void.

" 'GILBERT BARBEE,<br>
" 'THOMAS CONNOR,<br>
" 'T. H. HEIST,<br>
" 'E. D. PORTER,<br>
" 'By E. D. PORTER, Agent.'

"That said Frazee claims to have acquired and hold some interest in said last-mentioned contract with said Oliver, adversely to the plaintiffs and they now repudiate said contract as set forth in the petition, and set up the said contract of March 24, 1898, adversely to it. That the taking and having of said contract of date March 24, 1898, was kept secret by said Oliver and Frazee, and plaintiffs did not, till said Frazee and Oliver testified at the trial of this cause and the close of the evidence

herein, know that they were holding, claiming or operating under said contract, nor just what it was under which they were claiming to exclude the plaintiffs from the management and profits of said land.

"Plaintiffs further state that they, in conjunction with said Oliver and Frazee, as partners as aforesaid, under said contract as set forth in the first count of this petition, were in possession of said forty acres of land and still so continue, and say that if said Oliver and Frazee are in possession of said land or any part thereof, it is as the partners of the plaintiffs and for the use and benefit of said partnership, and that said contract above set forth dated March 24, 1898, is but a substitution for or a continuation of the said contract set forth in the petition, and that together they constitute but one instrument for the use and benefit of said partnership, or that if the said contract, taken by said Oliver in his own name, superseded the one set forth in the petition, then that said Oliver and Frazee hold the said contract dated March 24, 1898, and all benefits which they have derived or may derive thereunder, for the benefit of said partnership to be shared in according to the representative interests of said Oliver, Frazee and the plaintiffs, as herein stated.

"Plaintiffs allege that the respective rights and interests of the plaintiffs and said defendants in said contract, of date November 23, 1896, were and are in the following proportions, respectively: said Oliver thirteen forty-eighths; said Frazee eight forty-eighths; said Prehm twelve forty-eighths; said Elsner three forty-eighths; said Seiler six forty-eighths, and said August Fahlenbock six forty-eighths; that such rights and interests in said contract were and are held and owned and mining operations carried on in and upon said land by the said defendants Oliver and Frazee and the plaintiffs as partners to and with each other and altogether, they, each and all formed and constituted a partnership for the purpose of holding, possessing and owning said contract and the lease therein provided to be

made, and for the purpose of carrying on and conducting mining operations in and upon said tract of land and performing the conditions of said contract, which partnership was in existence during all the times mentioned and herein referred to, for the purposes aforesaid, and is still in existence for such purposes, and during all of its existence has carried on said mining operations are, as aforesaid, and plaintiffs allege are now, in right and justice, entitled to so carry on the same and share in the benefits thereof, in proportion to their respective interests as aforesaid.

"The plaintiffs further state that the said Oliver was the superintendent and managing partner of said partnership in said business, receiving a salary for his time and services, and had full and unrestricted control of the said business and that if there was any omission of duty whatever in the performance of the condition of said contract as set forth in the petition, it was through the negligence or fraud of said Oliver, colluding with said Frazee, Carney, Aldrich and Porter; that in the conduct of the said business the said Oliver, as such superintendent and managing partner, had the receiving and disbursing and did receive and disburse all the moneys arising in the course of said business and resulting from the mining operations in said land, and had the money in his hands to pay the taxes on said land, twelve dollars and twenty-five cents, before such taxes became delinquent and should have paid such taxes but negligently and fraudulently failed and refused to do so.

"Plaintiffs further state that upon the hearing and trial of this case, they have learned and discovered from the evidence of the defendants Oliver and Frazee that under the said contract of March 24, 1898, they have received and appropriated to their own exclusive use from the east twenty acres of said described forty acres, royalties and profits up to and including October 29, 1898, the sum of two thousand and sixty-nine dollars and eleven cents and are still so continuing from day to

day and week to week receiving the royalties and profits from said twenty acres of land and appropriating the same to their own exclusive use, and wholly excluding the plaintiffs from any share or participation therein; that said Oliver and Frazee have, out of the said royalties and profits, purchased a pair of scales at a cost of seventy-five dollars and placed upon said land to be used in carrying on the mining operations thereon.

"Now, therefore, the plaintiffs pray that said contract of March 24, 1898, be adjudged subordinate to that contract set forth in the petition dated November 23, 1896, or an extension thereof, and that in any event if the said contract of March 24, 1898, is to be held valid, then that the same inure to the said partnership with all rights and benefits going therewith, in proportion to the rights of the respective partners as aforesaid, and that an accounting may be had and the defendants Oliver and Frazee adjudged to pay the plaintiffs their respective portions of the royalties and profits due them up to the present time and in the future, and for all other proper relief and for general relief, and costs of suit.

"THIRD COUNT.

"Plaintiffs further state that they, for the first time, after the filing of the answer of defendants Carney and Aldrich herein, and the evidence of said Carney and Aldrich given at the trial of this cause and at the close of the evidence, knew in just what way said Carney and Aldrich claim adversely to the plaintiffs the land or a portion thereof described in the first count of this petition, and therefore, the plaintiffs now allege and state that said defendants Aldrich did on the twenty-second day of March, 1898, obtain a contract of which the following is a copy:

" 'March 22, 1898.

" 'For and in consideration of one dollar to us in hand paid, receipt of which is hereby acknowledged, we this day give

to J. E. Aldrich and associates a contract for lease on the following described property, situated in Jasper county, State of Missouri:   All of the west half of the northeast quarter of southwest quarter of section 7, township 27, range 32, containing 20 acres more or less.   The conditions of this contract are as follows:   The said J. E. Aldrich and associates are to comply with the same terms and conditions of the leases given by the Rex Mining & Smelting Company, a copy of which is hereby attached as a part of this contract, and to begin at once in the sinking of one shaft on each north and south ten acres of the above-described 20 acres, and to sink shafts to a depth of one hundred feet within six months from the date of this contract, unless pay ore be struck and worked at a less level, and to put in and keep in operation sufficient machinery and pumps to thoroughly drain said ground and to pay over to us with statements each week fifteen per cent royalty on all ores raised on said ground.

" 'If above conditions are complied with we hereby agree to give J. E. Aldrich and associates a lease on the above-described 20-acre tract of land for a period of ten years from date of this contract, to be subject to the same terms and conditions, excepting royalty, as Rex Mining & Smelting Company leases, a copy of which is hereto attached.

" 'If all of the above conditions are not complied with within time specified, then this contract shall be null and void.

" 'GILBERT BARBEE,

" 'THOMAS CONNOR,

" 'T. H. HEIST,

" 'E. D. PORTER,

" 'By E. D. PORTER, Agent.'

"That an interest in said contract is claimed by said Carney, the same having been obtained jointly for him and said Aldrich; that said Carney and Aldrich, collusively and fraudulently, acting with said Oliver, Frazee and Porter, in-

tending to defraud the plaintiffs of all right in and to the said described land and all benefits arising therefrom, to which they were justly entitled, obtained and took such contract, well knowing then, theretofore and now all the rights and claims of the plaintiffs in and to the premises.

"Plaintiffs further allege and state that the said defendants Carney and Aldrich were miners, sublessees and undertenants of the plaintiffs and said Frazee and Oliver as a partnership, doing business under the name of the Lone Lady Mining Company, at the time of taking the said contract which bears date March 22, 1898, and had been for a long time prior thereto such miners, sublessees and undertenants.

"That said contract of date March 22, 1898, is subsequent and subordinate to that contract set forth in the petition, and is void, or if not void, is held by said Carney and Aldrich for the use and benefit of the said partnership, composed of the plaintiffs and said Oliver and Frazee, and is in effect but a substitution for or a continuance of the said contract set forth in the petition, and inures to the benefit of said partnership, and that said Carney and Aldrich so hold, possess and occupy said land for said partners and partnership.

"Plaintiffs further state that they learned and discovered at and upon the trial of this cause and at the close of the evidence that said defendants Carney and Aldrich have since the twenty-second day of March, 1898, sold ore to the gross value of three hundred and sixty dollars from said land, and have received and appropriated to their own use a profit therefrom of five per cent in royalties which belong to said partnership.

"Wherefore the plaintiffs pray for an accounting against said defendants Carney and Aldrich, and that the plaintiffs may have judgment for the several amounts respectively due them and that said contract of March 22, 1898, be adjudged subordinate to said contract of November 23, 1896, or an extension thereof, and that in any event said contract of March 22, 1898, be adjudged and decreed to be the property of and

to inure to said partnership, and for all other relief and general relief and costs of suit."

Which motion the court overruled, and denied to plaintiffs the right to file their amended or supplemental petition, for the reason as expressed by the court, that the grounds for relief set out therein are based upon new matter entirely outside the scope of the original petition. The court then, upon the testimony taken, entered its judgment dismissing plaintiffs' bill, and from its action in so doing, and for its refusal to permit the filing of plaintiffs' amended supplemental petition offered, this appeal is prosecuted.

The trial court found from the testimony (and, we think, properly, without undertaking its detailment at this time) that as the terms and conditions of the contract of November 23, 1896, upon which the original petition in the case was predicated, had not been complied with by plaintiffs, or by any one with whom they were associated or in any way related, its specific performance could not be enforced against the defendants Porter, Barbee, Connor and Heist (the owners of the land who signed the contract in suit), and dismissed plaintiffs' bill for that reason.

But appellants now contend that as the evidence at the trial disclosed the fact that plaintiffs and the defendants Oliver and Frazee were partners in the working and operation of the land in suit under the contract of November 23, 1896, and that as the defendant Oliver was acting for them as superintendent in the management and operations on the land in question, under said contract, and that as the defendants Carney and Aldrich were subcontractors, or lessees working the lands under plaintiff, they could not acquire new relations to the land, by additional or new contracts from their codefendants, Porter, Barbee and Connor and Heist (the owners of the land) antagonistic to the plaintiffs; or that if they did acquire new and additional rights to, or interests in the land in question from the defendants (owners thereof) they would inure to the joint

benefit of plaintiffs and themselves, and that whatever those rights and interests should on fuller inquiry be found to be, they should be settled and determined in this court, to avoid useless delay and a multiplicity of actions.

If the correctness of the legal proposition now so strenuously urged upon us by appellant, "that when one or more members of a copartnership or joint venture, during its existence takes a new contract in substitution of the old regarding or affecting the venture to be prosecuted, the work to be done or the thing to be accomplished or acquired, in his or their name, to the exclusion of the other co-partners or fellow operators, it would inure to the benefit of all the co-partners or joint operators," be conceded, and if it be further agreed as contended by appellants that courts, to avoid delays and multiplicity of suits, should permit pleadings to be amended to conform to facts shown during the progress of a trial as far as possible; that forfeitures are not favored in equity, and that pleading in the alternative should never be discouraged; these propositions are no answer to the reason assigned by the trial court in denying to plaintiffs the right to file their amended supplemental petition, asking a decree based upon new matter entirely outside of the scope of the original petition. While a bill not originally framed in the alternative may by amendment be converted into one of that character, as asserted by appellant, this does not authorize the introduction into the matter of the bill (as is sought to be done by plaintiffs' amended petition offered), inconsistent claims to relief, founded on different states of facts, either of which if true, would entitle the plaintiffs to relief of a wholly different character, and against different parties ocupying wholly different relation to the plaintiffs and to the property sought to be affected by the decree prayed for. In fact, the alternative relief asked in the amended petition offered by plaintiffs and refused by the court, would not in the least affect or concern the defendant landowners, Porter, Barbee, Connor and Heist, who alone would

Prehm v. Porter.

have been involved if the original prayer for the specific per-
formance of the contract of November 23, 1896, had been
granted.     But independent of the fact that the proposed
amendment of plaintiffs would have in effect amounted to the
institution of a new and wholly different suit, both as to the
parties really to be affected and as to the cause of action to be
considered, the amendment as offered, if considered sufficient
under the rules of good pleading, came too late to entitle plain-
tiff, as a matter of right, to have it allowed.   After a cause
has been heard upon the original bill and the court has an-
nounced what its findings would be, certain it is that no appel-
late court would say the trial court had so abused its discre-
tion in refusing to permit an amendment which necessarily
would involve the reopening of the case that additional testi-
mony might be taken, and to effect a result wholly different
from that sought by the original bill, its judgment in the cause,
would for that reason be reversed on appeal.   By the action of
the trial court in denying to plaintiffs the right to file their
amended petition, plaintiffs have not been defeated of any right
they may have against the defendants Oliver, Frazee, Carney
or Aldrich, on account of their alleged relation with them in
the matter of operating and controlling the land upon which a
lease is sought.   By an appropriate proceeding all these rights
in that particular may yet be adjusted and determined, wholly
uninfluenced and unaffected by any judgment that was, or that
could have properly been entered herein.

    Finding no error in the action of the trial court, its judg-
ment will be affirmed.   All concur.