CHICAGO, R. I. & P. RY. CO. v. McINTIRE.

No. 906.    Opinion Filed November 14, 1911.

(119 Pac. 1008.)

1. **COURTS—Jurisdiction—State Comity—Torts—Transitory Actions.** A cause of action accruing in the state of Kansas under the statute of that state which provides: "Every railroad company organized or doing business in the state of Kansas shall be liable for damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any persons sustaining such damages; provided * * *" (section 1, chapter 281, Laws of Kansas, 1907), the law of this state concurs in holding that the act complained of, under the Kansas statute, gives a right of action. (Section 36, article 10, Constitution.) Held, that the Kansas statute is not against the public policy of the laws of this state, and, although such right of action exists by statute in the foreign jurisdiction, and not by common law, the same may be enforced in the courts of this state.

2. **NEGLIGENCE—Elements—Pleading—Petition.** A petition containing general averments of negligence "as hereinbefore complained of, consisted in this," presents only such issues as are found in the specific allegations (following **Chicago Rock Island and Pacific Ry. Co. v. Wheeler**, 70 Kan. 755, 79 Pac. 673).

(a) To constitute actionable negligence, where the alleged wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.

(b) Where an employee is injured, either by the willful or intentional act of the employer or the failure to exercise ordinary care on the part of such employer, such employee or his representative may plead both in the alternative in one count.

3. **MASTER AND SERVANT—Injuries to Railroad Employee—Negligence.** Certain instructions examined, held to be erroneous.

(Syllabus by the Court.)

*Error from District Court, Garfield County; M. C. Garber, Judge.*

Action by Frances E. McIntire against the Chicago, Rock Island and Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*C. O. Blake, H. B. Low, W. I. Gilbert,* and *Robberts & Curran,* for plaintiff in error.

*A. A. Graham* and *Parker & Simons,* for defendant in error.

WILLIAMS, J. This proceeding in error is to review the judgment of the lower court in an action wherein the defendant in error, as plaintiff, sued the plaintiff in error, as defendant, for damages alleged to have been sustained on account of the death of her husband, Edwin C. McIntire, at Wichita, Kansas, on the 5th day of September, 1907.

The following questions are raised: (1) The lower court was without jurisdiction; (2) a cause of action not stated; and (3) error in giving certain instructions.

1. Counsel for plaintiff in error in their brief say:

"The statutes of Oklahoma and Kansas, providing for recoveries of damages for injuries resulting from the wrongful act or omission of another are the same. The Oklahoma statute having been adopted from Kansas, and if this action was for damages resulting from a common-law tort, there can be no question but that this court might properly in a spirit of comity, entertain jurisdiction. But the plaintiff is not seeking to enforce such a right. The recovery is predicated upon another Kansas statute, also in derogation of the common law, which was in force in Oklahoma at the time the alleged rights were created in Kansas."

In *Herrick v. Minneapolis & St. Louis Ry. Co.,* 31 Minn. 11, 16 N. W. 413, it is said:

"The general rule is that actions for personal torts are transitory in their nature, and may be brought wherever the wrongdoer may be found, and jurisdiction of his person can be obtained. As to torts which give a right of action at common law, this rule has never been questioned, and we do not see why the transitory character of the action, or the jurisdiction of the courts of another state to entertain it, can in any manner be affected by the question whether the right of action is statutory or common-law In actions *ex contractu* there is no such distinction, and there is no good reason why any different rule should be applied in actions *ex delicto.* Whenever, by either common law or statute, a right of action has become fixed and a legal liability incurred, that liability, if the action be transitory, may be enforced, and the right of action pursued, in the courts of any state which can obtain jurisdiction of the defendant, provided it is not against the public policy of the laws of the state where it is sought to be enforced. Of course, statutes that are

criminal or penal in their nature will only be enforced in the state which enacted them; but the statute under which this action is brought is neither, being purely one for the reparation of a civil injury. The statute of another state has, of course, no extraterritorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired, or the liability was incurred, will govern as to the *right of action;* while all that pertains merely to the *remedy* will be controlled by the law of the state where the action is brought. And we think the principle is the same, whether the right of action be *ex contractu* or *ex delicto.*"

See, also, *Dennick, Adm., v. Railroad Co. of N. J.,* 103 U. S. 11, 26 L. Ed. 439; *Leonard, Adm., v. Steam Nav. Co.,* 84 N. Y. 48; *Chicago, etc., R. Co. v. Doyle,* 60 Miss. 977, 23 Am. L. Reg. 26, 8 Am. & Eng. R. Cases, 171; *Nashville & C. R. R. Co. v. Sprayberry,* 8 Baxt. (Tenn.) 341; *Selma, etc., R. R. Co. v. Lacy,* 43 Ga. 461, 49 Ga. 106.

In *Knight v. West Jersey Railroad Co.,* 108 Pa. St. 250, it is said:

"At common law purely personal wrongs, as respects civil remedy, died with the person who received them; but whether just or unjust, that rule has been abrogated to a great extent by the statutes, both in this country and in England. In the earlier period of such legislation there was a tendency to adopt the principle that 'where a new right of action is given by the statute for that for which no action would lie at common law, such action can only be brought in the state or county whose statute gives the right, and for the wrongs then suffered.' The general rule is, as to personal torts which give a right of action at common law, that the action may be brought wherever the wrongdoer may be found, and jurisdiction of his person may be obtained. In actions *ex contractu,* their transitory character, and the jurisdiction of the courts to entertain them, are the same whether the right be given by statute or the common law. Like rule has recently been applied in Minnesota in an action *ex delicto,* the court remarking that where, either by common law or statute, a right of action has become fixed and legal liability incurred, if transitory it may be enforced in the courts of any state which can obtain jurisdiction of the defendant, provided it is not against the public policy of the laws of the state where it

is sought to be enforced. The statute of another state has no extra-territorial force, but rights under it will always, in comity, be enforced, if not against the policy of the laws of the forum. In such cases the law of the place where the right was acquired or the liability was incurred, will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought."

*Herrick v. Ry. Co., supra,* has been approved by the Supreme Court of the United States. *N. Pac. R. R. Co. v. Babcock,* 154 U. S. 190, 14 Sup. Ct. 978.

Jurisdiction of this cause seems to have been properly entertained by the courts of this state.

2. The petition alleges:

"(a) On or about said fifth day of September, 1907, said Edwin C. McIntire, deceased, while in the employ and pay of said defendant, as car inspector and repairer, in the city of Wichita, aforesaid, and while in the proper performance and discharge of his duties, as such car inspector and repairer, and without fault on his part, received, through the carelessness and negligence of said defendant, its officers, agents, servants and employees, other than said Edwin C. McIntire, deceased, certain bodily injuries which, on the same day, resulted in his death.

"That said carelessness and negligence on the part of said defendant causing injury to, and the death of, said deceased, as hereinbefore complained of, consisted in this, to wit:

"(b) In the careless and negligent switching, handling and moving, by a switch crew of said defendant, in charge of a foreman thereof, in the yard of the defendant in said city of Wichita, of a car upon and along a track in such manner as to strike against other cars then and there standing upon such track, and upon and between which, the said Edwin C. McIntire, deceased, was, at the time rightfully and properly working in the capacity of his employment and the line of his duty as car inspector and repairer, as aforesaid, without notice or warning to said deceased, and at a time and place and under circumstances when and where the said deceased did not know, and had no reason to anticipate that said car would be switched, handled or moved, but, on the other hand, had good and valid reasons to know and believe that said car would not, at that time, be switched, handled or moved, and when and where and under the circumstances said switch crew and the foreman in charge thereof knew, or, in the

exercise of ordinary care, should have known, that said deceased was at the time working."

Whilst the common-law forms or fictions in pleadings have been abolished by statute (section 5656, Comp. Laws Okla. 1909; section 3994, Stat. Okla. Ter. 1893), yet any particular right of action as it existed at common law remains the same unless abridged or denied by statute; such actions to be pleaded under one form of action, denominated a "civil action." Section 5625, Comp. Laws Okla. 1909; section 3963, Stat. Okla. Ter. 1893; *Casey et al. v. Mason,* 8 Okla. 668, 59 Pac. 252; *Choctaw, Oklahoma & Gulf R. Co. v. Zwirtz,* 13 Okla. 421, 73 Pac. 941.

Under the statute (section 5627, Comp. Laws Okla. 1909; section 3965, Stat. Okla. Ter. 1893), the facts constituting a cause of action are required to be pleaded in ordinary and concise language, and without repetition. The same facts, however, must be pleaded as would constitute the same cause of action at common law, and every fact necessary to be proved to entitle the plaintiff to recover must be averred in the petition in ordinary and concise language. *Casey et al. v. Mason, supra; Choctaw, Oklahoma & Gulf R. Co., supra.* The petition does not allege a duty owing to plaintiff's intestate by the defendant, or any duty of the defendant or its agents to look out for or warn the plaintiff's intestate. To constitute actionable negligence, unless the injury was wilful and intentional, three essentional elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure. *Muncie Pulp Co. v. Davis,* 162 Ind. 558, 70 N. E. 875; *B., O. & S. W. Ry. Co. v. Cox,* 66 Ohio St. 276, 64 N. E. 119; *Atlanta, etc., R. R. Co. v. West, Adm.,* 121 Ga. 641, 49 S. E. 711; *Wickenberg v. Minn., St. P., etc., Ry. Co.,* 94 Minn. 276, 102 N. W. 713; *Holland House Co. v. Baird,* 169 N. Y. 136, 62 N. E. 149; *Bluedorn v. Mo. Pac. Ry.,* 24 S. W. 57; *Faris v. Hoberg et al.,* 134 Ind. 269, 33 N. E. 1028; 29 Cyc. 420.

In *Chicago, etc., Ry. Co. v. Wheeler,* 70 Kan. 755, 79 Pac. 673, it is said:

"Where a petition contains general averments of negligence, 'as hereinbefore more specifically mentioned and described,' only such issues are thereby pleaded as are found in the specific allegations."

The plaintiff having declared that the carelessness and negligence, "as hereinbefore complained of, consisted in this" (setting out the specific allegations), only such issues are thereby pleaded as are found in such specific allegations. The plaintiff thereby stands or falls under the allegations as laid in paragraph (b), *supra*.

In 1 White's Personal Injuries on Railroads to Employees, sec. 328, p. 434, it is said:

"A marked distinction is recognized by the best considered cases, between the obligations of the railroad company toward third parties and that existing toward its own employees, with reference to the necessity of giving warning or notice of the movement of its trains in its own yards, or at places where the business of railroading requires the constant or frequent movement of trains or engines. Where the public are expected to be using the track or right of way, due care requires notice of the movement of trains, for strangers may be present who do not know of the perils of the situation; with the company's employees, however, there is held to be no duty to give warning of the movement of trains, as this is the very object of the employment in which the employee is engaged, and a risk is incident to the service, which he is held to assume, under his contract of employment. Employees about railroad yards are not like strangers or third parties; they understand the situation; they know the manner of doing the business and that cars frequently pass, without notice of their approach, and the danger of being struck by a backing engine, or car, is a risk incident to the business, as carefully conducted, and a peril of the employment."

In 2 Bailey on Personal Injuries (1897) sec. 2727, p. 918, it is said:

"Employees of a railroad company are presumed to contract with reference to the hazards incident to the service. It is not the duty of such a company to place an employee on the lookout to warn others of approaching danger. It is their duty, without warning, to observe due care, and this is a part of their undertaking, and any omission is at their peril. Hence it was held

not negligence *per se* to back a train without providing a watch-· man on the rear car to warn a switchman of danger."

In 3 Elliott on Railroads (2d Ed.) sec. 1283, p. 692, it is said:

"The general rule is that where the danger· is an extra-ordinary one, that is, a danger not ordinarily incident to the service, and the employer has knowledge of the· danger, he is guilty of negligence if he fails to warn the employee. Where, however, the danger is obvious to a person of ordinary intelli-gence and one that can be known and appreciated by a person who exercises ordinary prudence and care, or where it is not an extraordinary peril, but is one incident to the service, there is no duty to give warning, unless the person employed has not reached the sense of discretion. Where the danger is open to the observation of a person of ordinary intelligence, the general rule is that the employer is not guilty of negligence in failing to give the employee warning of such danger, since the risk is as-sumed by the employee."

In *Crowe, Adm., v. N. Y. C. & H. R. R. R. Co.,* 70 Hun, 37, 23 N. Y. Supp. 1100, it is said:

"Great care and precaution are required on the part of rail-road companies when they are moving cars in places where the general public have a right to pass, to in some manner announce their approach; but a different rule obtains in the companies' yards, where cars are being distributed and trains made up. The employees about such yard understand the situation; they know the manner of doing the business therein, that cars frequently pass along without notice of their approach, and they assume the risks incident to the business as thus conducted."

In *Unfried v. Baltimore & O. R. R. Co.,* 34 W. Va. 260, 12 S. E. 512, it is said:

" * * * And we find in Patterson on Railway Accident Law (page 343, sec. 316) the author says: 'There is no im-plied obligation on the part of the master to indemnify the ser-vant against the ordinary risks of the service * * * and upon this principle train hands take the risk of injury from the negligent movement of other trains, * * * · from being struck by engines or cars moving in a railway yard, without notice or unattended;' * * * also section 317 * * * Car-repair-ers, while working beneath. cars in a railway yard, take the risk of injury from the car being struck by another car when they

habitually do such work without asking the car to be protected by a flag."

In *Plunkett v. Central of Ga. Ry. Co.,* 105 Ga. 203, 30 S. E. 728 [102 Ga. 577], it is said:

" * * * The petition alleged that the opening between the cars had been left for the use of the employees of the defendant in going backward and forward within the railroad yard, and that, such being the case, the railroad company was under an obligation to notify its employees when such opening was about to be closed up, and having closed it up without notice to the plaintiff's son, who was lawfully engaged in his work in the defendant's yard, and on account of the failure to so notify him, he being crushed between the cars, the company would be liable. This was the only ground of negligence the court thought sufficient to sustain the petition filed by the plaintiff. Upon the trial of the case it appeared that the opening had not been left for the use of the employees of the defendant, but was such an opening as was ordinarily left from time to time in railroad-yards, caused by the shifting from place to place of the cars which were usually therein. Such being the case, the defendant was under no duty to notify its employees when this opening would be closed up; and therefore, an employee who attempted to use such an opening in going from place to place in the yard took the risks incident thereto, and if injured, would have no right of action against the company."

In *Aerkfetz v. Humphreys,* 145 U. S. 418, 36 L. Ed. 758, Mr. Justice Brewer, in speaking for the court, said:

"At the time of the accident plaintiff was working near the west end of the yard, when a switch engine pushing two cars moved slowly along the track upon which he was at work, the speed of the engine being about that of a man walking. Plaintiff stood with his back to the approaching cars, and so remained at work without looking backward or watching for the moving engine until he was struck and run over by the first car. Upon these facts we observe that the plaintiff was an employee, and. therefore, the measure of duty to him was not such as to a passenger or a stranger. As an employee of long experience in that yard, he was familiar with the moving of cars forward and back-·ward by the switch engine. The cars were moved at a slow rate of speed, not greater than that which was customary, and that which was necessary to make up the trains. For a quarter of a mile east of him there was no obstruction, and by ordinary at-

tention he could have observed the approaching cars. He knew that the switch engine was busy moving cars and making up trains; and that at any minute cars were likely to be moved along the track upon which he was working. With that knowledge he places himself with his face away from the direction from which cars were to be expected, and continues his work without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuous recurring movement of the cars, would take reasonable precautions against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars, and enabled him to step to one side as they moved along the track. It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendants, and if by any means negligence could be imputed to them, surely the plaintiff by his negligent. inattention contributed directly to the injury."

See, also, *Mo. Pac. Ry. Co. v. Haley, supra; Walker et al. v. Scott,* 67 Kan. 814, 64 Pac. 615; *Keefs, Admx., v. Chicago & N. W. Ry. Co.,* 92 Iowa, 182, 60 N. W. 503; *Wabash Ry. Co. v. Skiles,* 64 Ohio St. 458, 60 N. E. 576.

Under the unbroken line of authority, as the law obtained

in Kansas at the time of this accident, this petition fails to state a cause of action, unless it charges the switch crew or its foreman with a wilful or intentional injury. The petition charges that the switch engine was "switched, handled or moved" by the switch crew "when, where and under the circumstances said switch crew and the foreman in charge thereof knew, or, in the exercise of ordinary care, should have known, that said deceased was, at the time, working."

Section 5655, Comp. Laws Okla. 1909 (section 3993, Stat. Okla. Ter. 1893), provides:

"In the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties."

The plaintiff here pleads in the alternative, alleging that the crew and the foreman in charge thereof when said switch engine caused the cars to be jammed together knew that said deceased was at said time working between said cars, or, in the exercise of ordinary care, should have known that said deceased was at said time working between said cars. Such allegation is good against a general demurrer, no motion being made to separate same. *Kuchler et al. v. Weaver,* 23 Okla. 420, 100 Pac. 915; *Brockett v. Fair Haven, etc., R. R. Co., etc.,* 73 Conn. 428, 47 Atl. 763; *Turney v. So. Pac. Co.,* 44 Ore. 280, 75 Pac. 144, 76 Pac. 1080; *Prehm v. Porter,* 165 Mo. 115, 65 S. W. 264; *Owensboro City R. R. v. Hill,* 21 Ky. Law Rep. 1638, 56 S. W. 21; 1 Bates, Pleading and Practice (1908), p. 492.

The latter alternative, however, does not charge a wilful or intentional injury, the allegation being substantially that, by the exercise of ordinary care, the crew and the foreman in charge thereof should have known that deceased was between said cars working. Nor, under the foregoing authorities, was any duty imposed upon said crew or its foreman to exercise care to look for or warn the intestate. But the other alternative charges that the crew and its foreman knew of the intestate's position. Therefore, this alternative, by a liberal construction, with a view to substantial justice between the parties, charges a wilful or

intentional injury.   In that view, the petition states a cause of
action; otherwise, it does not.

In Labatt on Master and Servant (1904), at page 4, section
2, it is said:

"A proposition which has so frequently been enunciated by
the courts as to have become axiomatic is that, *prima facie*, a ser-
vant does not assume any risks which may be obviated by the
exercise of reasonable care on the master's part.   In other words,
the abnormal, unusual, or extraordinary risks which the servant
does not assume as being incidental to the work undertaken by
him are those which would not have existed if the master had
fulfilled his contractual duties."

In Bailey on Master's Liability for Injuries to Servant
(1894), at page 170, it is said:

"Where a fireman was employed in the operation of an en-
gine which was regularly run backward, it was held that, as he
was employed to perform a particular thing, as to the dangers
of which he must be presumed to have had full knowledge, he
could not complain that the act was dangerous; the rule being
that the servant assumes the hazards of dangerous methods, as
well as the use of defective tools or machinery, when, after em-
ployment, he learns of the defects, but voluntarily continues in
the employment without objection.   (Citing *Kuhns v. Railway
Company*, 70 Ia. 561, 31 N. W. 868; *Missouri Furnace Co. v.
Abend*, 107 Ill. 44.)   *   *   *   So, when a foreman or yard-
master, who has charge of switching cars and making up of trains
in a yard, is familiar with the tracks, and knows a certain frog
is not blocked or filled, and is unsafe or dangerous; the general
rule being that an employee who contracts for the performance
of hazardous duties assumes such risks as are incident to their
discharge from causes open and obvious, the dangerous character
of which causes he had an opportunity to ascertain."   (*Wilson
v. Railway Company*, 37 Minn. 326, 33 N. W. 908; *Norfolk &
W. Ry. Co. v. Cottrell*, 83 Va. 512, 3 S. E. 123; *Mayes v. Rail-
way Co.*, 63 Ia. 562, 14 N. W. 340, and 19 N. W. 680; *McGlynn
v. Brodie*, 31 Cal. 378.)

In Labatt on Master and Servant (1904), page 26, section
16, it is also said:

"The degree of care, therefore, which the master is bound
to exercise, is measured by the dangers to be apprehended or
avoided, or, as another case puts it, 'must be proportionate to

the dangerous nature of the means, instruments and machinery used;' or, in the words of the Supreme Court of the United States, the 'master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter.'" (*Hough v. Texas & P. R. Co.*, 100 U. S. 213, 25 L. Ed. 612; *Texas & P. R. Co. v. Barrett* [1895] 14 C. C. A. 373, 30 U. S. App. 196, 67 Fed. 214; *Sans Bois Coal Co. v. Janeway*, 22 Okla. 425, 99 Pac. 153.)

"The cases in which this principle suggests itself as the appropriate criterion of the master's fulfilment or nonfulfilment of his legal obligations may be said to fall into three categories: (1) Those in which the business carried on by him is, as regards its ordinary incidents, unusually dangerous, such as that of a railway company, or of mine owners, or of persons operating an elevator, or engaged in the preparation, storage or handling of explosive and inflammable substances, or using steam-boilers, or using electrical appliances.    *    *    *"

The plaintiff does not predicate her cause of action upon the failure of the master to discharge any of the duties of the master in the way of providing a safe place to work, or to provide reasonable rules and regulations for protecting him in the place of danger whilst at work. Such being the case, the question of the applicability of section 6, article 23, of the Constitution does not arise.

3.   The court instructed the jury as follows:

"(c)   You are instructed that even though you should find from the evidence that the deceased, Edwin C. McIntire, should, before placing himself between the cars where he received the injuries, if any, complained of, have placed a blue signal, or other signal or warning of any kind, at the end of each car or train, where he was working, and failed to do so, yet, if you further find from the evidence that a certain car or cars were, by the switch crew of the defendant then and there working, switched or allowed to run against such cars upon which the deceased was then working, without knowing whether or not such standing cars had a blue signal or other signal or warning of any kind at the end thereof, as a warning that such standing cars should not be moved, then such failure, if any, of the deceased to so place such signal becomes immaterial as not affecting the result in this case."

This instruction was erroneous, for, under the excerpts heretofore quoted, which correctly state the rule then obtaining in Kansas, the switch crew and its foreman owed the plaintiff's intestate no duty except not to wilfully or intentionally injure him. The law did not impose upon them the duty to look out for him or to give warnings.

The court further instructed the jury:

"(d)   You are further instructed that even though you should find from the evidence that on and prior to the said 5th day of September, 1907, there was a custom in force in the defendant's yards at Wichita, Kansas, that a car inspector and repairer, while working upon cars, should place a blue flag at the end thereof for the purpose of warning other employees when working in said yards not to move such cars, and that the deceased failed to do so, yet if you further find from the evidence that a certain car or cars were, by the switch crew of the defendant then and there working, switched or allowed to run against such cars upon which the deceased was then working, without knowing whether or not such standing cars had a blue signal or other signal or warning of any kind at the end thereof, as a warning that such standing cars should not be moved, then such failure, if any, of the deceased to so place such signal becomes immaterial as not affecting the result in this case."

This instruction, for the same reason, was also erroneous.

It is not essential to consider the other objections to instructions, as they will not likely arise upon another hearing.

The judgment of the lower court is reversed and remanded, with instructions to grant a new trial.

All the Justices concur.