SANS BOIS COAL CO. v. JANEWAY.

No. 888, Ind. T.   Opinion Filed November 11, 1908.

(99 Pac. 153.)

1. NEGLIGENCE—Questions for Jury—Contributory Negligence. Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury.

2. SAME—Question for Court, When. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.

3. Master and Servant—Injuries to Servant—Contributory Negligence—Continuance in Service—Promise to Repair. If a person engaged as a miner for a coal company, who has knowledge of defects in appliances necessary to force pure air into the mines and to dilute and render harmless and expel therefrom noxious and poisonous gases, gives notice thereof to the proper officer, and is promised that such defect shall be remedied, his continuance in such employment, in the well-grounded belief that such appliances will be put in proper condition, within a reasonable time, does not necessarliy, or as a matter of law, make him guilty of contributory negligence. It is a question for the jury whether in relying on such promises, and continuing in the employment after he knew of such defects, he was in the exercise of due care.

4. SAME—"Assumption of Risk"—Defined. "Assumption of risk" is a term of the contract of employment, express or implied from

the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk.

5.     **SAME—Waiver of Statutory Protection.** The purpose of Act. Cong. July 1, 1902, c. 1356, 32 Stat. 631, requiring the owners or managers of every mine to provide an adequate amount of ventilation and .proper appliances or machinery to force air through such mine to the face of each and every working place, so as to dilute and render harmless, and expel therefrom, the noxious and poisonous gases, was to protect the employes of such owners or managers from a well-known danger of their service, the risk from which, from the nature of their employment, they were compelled to assume; and, although an employe impliedly waives a compliance with the statute, and agrees to assume the risk from defective appliances by continuing in the service, a court will not recognize or enforce such agreement. To permit owners or managers of mines to avail themselves of such an assumption of risk by its employes would be, in effect, to enable them to nullify a penal statute, and that is against public policy.

(Syllabus by the Court.)

*Error to the United States Court for the Central District of the Indian Territory, sitting at Poteau; Wm. H. H. Clayton, Judge.*

Action by J. F. Janeway against the Sans Bois Coal Company. Judgment for plaintiff, and defendant brought error to the Court of Appeals of the Indian Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma under the enabling act and Schedule of the Constitution. Affirmed.

*Charles E. Warner* and *Harry P. Warner,* for plaintiff in error.

*Wiley H. Jones* and *Russer V. Varner,* for defendant in error.

KANE, J. This was an action for personal injuries, brought by the defendant in error, plaintiff below, against the Sans Bois Coal Company, plaintiff in error, defendant below. The complaint contained two counts. The first alleged, in substance, that on the 24th day of July, 1904, the plaintiff was in the employ of defendant as a coal digger in its coal mine No. 2, near McCurtain, Ind. T., and was engaged in driving the air course; that when he went into the third north entry, where he was to work, he found, on reaching the dip switch at a point about 45 feet from the face of

said entry, "dead marks," which indicated to him that it was dangerous to go further, and he, therefore, stopped and waited the arrival of the fire boss, who was alleged to be the agent and vice principal of the defendant; that the fire boss brushed out the gas from the working place of plaintiff and that of his companions almost opposite him, which were separated by a thin wall, 3½ to 4 feet thick, and removed the "dead marks," and told plaintiff and those with him that it was all right, to go to work, which they did, and continued until noon, when an explosion occurred in the third north entry from the gas in said entry becoming ignited from the lamp of his companions working near, in said entry, or from some other cause; that at a point 3 or 4 feet from the face of the entry there was a break through the wall into the air course, something like 2 feet one way and 3 feet the other, and when the explosion occurred plaintiff was working in front of said break, in performing his duty, and the fire rushed through said break, causing the injuries complained of.  The acts of negligence on the part of the defendant are alleged to be, in substance, that it failed to furnish and provide an adequate amount of ventilation of pure air, or to provide proper or suitable appliances to force pure air to the face of each and every working place so as to dilute and render harmless, and expel therefrom, the noxious or poisonous gases, but negligently, carelessly, and wantonly permitted said gases to accumulate in dangerous quantities in the working places of said mine, and in the third north entry and air course, and negligently, carelessly and wantonly failed and refused to furnish and provide a curtain or "brattish" at the dip switch, at or near where the "dead marks" were placed, so as to force the pure air to the face of the third north entry and air course, and to the working place of plaintiff and his companions.

The second count was substantially in the language of the first, with the additional allegation, in substance, that a day or two prior to said explosion the plaintiff and his companions made a complaint to C. R. Fiske, the pit boss, who was averred to be agent and vice principal of the defendant, as to the failure to pro-

vide said curtain or brattish, and were assured by him that the situation was not dangerous; that there was no danger, and a suitable curtain would be provided, which assurance and promises were also made by the fire boss, and that, relying on such promises and assurances, plaintiff continued his work; that the presence of gases in dangerous quantities and failure to provide air, etc., and the curtain or brattish were known to defendant, or should have been known to it.

The answer of defendant denied specifically, every material allegation in the complaint, except that plaintiff was an employe of defendant engaged in digging coal, and further expressly averred and interposed the defense of negligence of fellow servants, contributory negligence of plaintiff, and knowledge on the part of plaintiff, and assumption of risk.

Upon the issues thus joined the cause was tried to a jury, which found a verdict for the plaintiff in the sum of $750, upon which judgment was duly rendered, whereupon the defendant prosecuted error to the Court of Appeals of the Indian Territory, and the cause was transferred to this court, under the terms of the Enabling Act and Schedule of the Constitution.

Counsel for plaintiff in error assigns various errors, but argues them all under three subheads, as follows: First. The defendant was not shown to have produced the explosion in which plaintiff was injured. Second. The contributory negligence of Janeway was the approximate cause of the explosion. Third. The plaintiff knew that danger of gas was imminent, and that the dip switch was not curtained. Therefore he assumed the risk. The only act tending to establish negligence on the part of the defendant was its failure to put the curtain or brattish across the dip switch, and this omission was conceded by the defendant. The plaintiff contended below that this was a violation of a section of the United States statute, which provides:

"That the owners or managers of every coal mine shall provide an adequate amount of ventilation of not less than eighty-three and one-third cubic feet of pure air per second, or five thous-

and cubic feet per minute for every fifty men at work in said mine, and in like proportion for a greater number, which air shall by proper appliances or machinery be forced through such mine to the face of each and every working place, so as to dilute and render harmless and expel therefrom the noxious or poisonous gases." (Act July 1, 1902, c. 1356, 32 Stat. 631.)

The court instructed the jury that this provision imposed upon the company, the duty of keeping the mine ventilated and keeping a sufficient amount of air passing through the mine to dilute and render harmless, and expel therefrom, the noxious and poisonous gases, to so intermingle and mix it with the current of air so that it may be carried off, and that the mine shall be relieved from standing gas. And further instructed the jury that:

"The only question before it to determine in this case is as to whether or not the company was negligent in not putting this brattish across the dip switch, if in the construction of same it was necessary to place that brattish there in order to carry the air through the part of the mine where the explosion occurred; if that were necessary, then the company should have done so, if it were not necessary, then, although some air may have been deflected through that mine, it would not have been their duty to do so."

Counsel for defendant finds no fault with the theory of the case thus presented, and we, therefore, take it that the foregoing instructions must be substantially correct.

There was evidence to the effect that when a break-through is cut it is necessary to have a curtain or brattish at the dip switch to force the fresh air to the face. That the dip switch was not curtained in this case is undisputed. There was also evidence to the effect that the want of this brattish was known to the plaintiff, who called the attention of Mr. Rowe, the fire boss, to it, and he told the plaintiff and others that it was all right, to go ahead, and that he would put a temporary curtain at the dip switch; that on the day before the accident the mine foreman, Mr. Fisk, was informed that it was necessary to have a curtain or brattish put up at the dip switch, and he said he would have it put there; that he had ordered a canvas two or three different times, but did not have any then. We believe this evidence was proper to go to the

jury, and that it reasonably tended to establish the negligence of the defendant.

Counsel for plaintiff in error contends that from the undisputed evidence he was entitled to a peremptory instruction. It is true that there was practically no conflict in the evidence on the foregoing points, but it does not necessarily follow that, where the evidence on the question of negligence is undisputed, the trial court is bound to find that there was or was not negligence as a matter of law.

"Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury." (*Worth Bros. Co. v. Kallas* [C. C. A.] 162 Fed. 306.)

The foregoing case is of more than passing interest, on account of its discussion of the principles involved in the first two assignments of error of the case at bar, both cases in these particulars being very much alike. Judge Dallas, who wrote the opinion, in discussing the reasoning on which the rule is based, says:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonably prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same con-

clusion from them that the question of negligence is ever considered as one of law for the court.".

The foregoing case seems to be decisive of the first two questions raised by the counsel for plaintiff in error. But there is another reason why the case was properly submitted to the jury on the question of contributory negligence. There was evidence to the effect that the defendant, as well as the plaintiff, had knowledge of the want of a curtain or brattish at the dip switch, and that it promised the defendant in error and others that it would remedy the defect as soon as it could procure proper material for such purpose, and that in the meantime it would put up a temporary curtain that would make the working place safe.

This brings this branch of the controversy within the ruling in *Hough v. Railway Co.*, 100 U. S. 213, 25 L. Ed. 612, the defect in that case, of which the plaintiff in error, a locomotive engineer, had knowledge, was one that existed in the cowcatcher or pilot. It was contended by the counsel for the railway company that the engineer was guilty of contributory negligence because he continued to run the locomotive after he had knowledge of the defects. The court held that, while he may have had knowledge of the defective cowcatcher, the fact that he complained thereof to both the master mechanic and the foreman of the roundhouse, and they promised that it would be promptly remedied, took the case out of the general rule. The fifth paragraph of the syllabus states the rule in such cases as follows:

"If the servant of such a company, who has knowledge of defects in machinery, gives notice thereof to the proper officer, and is promised that they shall be remedied, his subsequent use of it, in the well-grounded belief that it will be put in proper condition within a reasonable time, does not necessarily, or as matter of law, make him guilty of contributory negligence. It is a question for the jury whether in relying upon such promise, and using the machinery after he knew its defective or insufficient condition, he was in the exercise of due care. The burden of proof in such a case is upon the company to show contributory negligence."

Applying this rule to the case at bar, it may be stated thus:

"If a person engaged as a miner for a coal company, who has knowledge of defects in appliances necessary to force pure air into the mines and to dilute and render harmless, and expel therefrom, noxious and poisonous gases, gives notice thereof to the proper officer, and is promised that such defect shall be remedied, his continuance in such employment in the well-grounded belief that such appliances will be put in proper condition within a reasonable time does not necessarily, or as a matter of law, make him guilty of contributory negligence. It is a question for the jury whether in relying on such promises and continuing in the employment after he knew of such defects, he was in the exercise of due care."

We do not believe the third contention of counsel for plaintiff in error can be sustained by reason or authority. The verdict of the jury established the fact that the injury to plaintiff was brought about by the violation by the defendant of a penal statute. enacted for his protection. The question then arises, Did a knowledge on the part of the plaintiff that the defendant was violating the statute and his continuance in the service thereafter constitute such an assumption of risk as to prevent recovery? The same question arose in *Narramore v. Cleveland, C., C. & St. L. Ry. Co.,* 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, where Judge Taft discusses it in the following language:

"Assumption of risk is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes, or contributes to cause, the injury to himself; but the correct statement is that no right of action arises in favor of the servant at all; for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers, the risk of which he agreed expressly or impliedly to assume. The master is not, therefore, guilty of actionable negligence towards the servant. This is the most reasonable explanation of the doctrine of assumption of risk, and is well supported by the judgments of Lord Justices Bowen and Dry in the case of *Thomas v. Quartermaine,* 18 Q. B. Div. 685, 695. Sec.

also, language of Lord Watson in *Smith v. Baker* (1891) App. Cas. 325, and *O'Maley v. Gaslight Co.*, 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161. It makes logical that most frequent exception to the application of doctrine by which the employe who notifies his master of a defect in the machinery, or place of work, and remains in the service on a promise of repair, has a right of action if injury results from the defect while he is waiting for the repair of the defect and has reasonable ground to expect it. *Hough v. Railway Co.*, 100 U. S. 213, 25 L. Ed. 612; *Railroad Co. v. Babcock*, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; *Snow v. Railroad Co.*, 8 Allen (Mass.) 441, 85 Am. Dec. 720; *Gardner v. Railroad Co.*, 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107. From the notice and the promise is properly implied the agreement by the master that he will assume the risk of injury pending the making of the repair. If, then, the doctrine of the assumption of risk rests really upon the contract, the only question remaining is whether the courts will enforce or recognize, as against a servant, an agreement, express or implied on his part, to waive the performance of a statutory duty of the master, imposed for the protection of the servant and in the interest of the public, and enforcible by criminal prosecution. We do not think they will. To do so would be to nullify the object of the statute. The only ground for passing such a statute is found in the inequality of terms upon which the railway company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant to contract the master out of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute, and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that."

The rule is stated in 26 Cyc. 1180, as follows:

"There is some conflict of authority as to whether a master may avail himself of the defense of assumption of risk where the injury complained of resulted from his neglect of a duty imposed by statute. Where the defense is forbidden by the statute itself, he cannot, of course, rely upon it; and where there is no such inhibition, the weight of authority seems to be to the same effect. * * *"

Following the weight of authority, which we believe is also sustained by the better reasoning, we believe that the purpose of the act of Congress of July 1, 1902, *supra,* requiring the owners or managers of every mine to provide an adequate amount of ventilation and proper appliances or machinery to force air through such mine to the face of each and every working place, so as to dilute and render harmless, and expel therefrom. the noxious and poisonous gases, was to protect the employes of such owners or managers from a well-known danger of their service, the risk from which, from the nature of their employment, they were compelled to assume; and, although an employe impliedly waives a compliance with the statute, and agrees to assume the risk from defective appliances by continuing in the service, a court will not recognize or enforce such agreement. It is true the statute provides that the violation thereof shall constitute a misdemeanor, and any person convicted of such violation shall pay a fine of not exceeding $500, but the imposition of a penalty for a violation of the statute does not exclude other means of enforcement; to permit owners or managers of mines to avail themselves of such assumption of risk by its employes would be in effect to enable them to nullify a penal statute, and that is against public policy.

For the reasons given, we think there was no reversible error in the proceedings of the court below, and its judgment is accordingly affirmed; and, it appearing that the judgment below has been superseded, it is further ordered that the defendant in error shall have and recover of the plaintiff in error the further sum of 10 per cent. of the judgment so superseded, as provided by section 1311, Mansf. Dig. (Ind. T. Ann. St. 1899, § 813).

All the Justices concur.