DEWEY PORTLAND CEMENT CO. v BLUNT.

No. 2913. Opinion Filed May 20, 1913.

(132 Pac. 659.)

1. APPEAL AND ERROR—Verdict—Evidence. Where the question, whether or not the master has been negligent, depends upon the nice distinction between that which is reasonably safe and that which is not so, it is a question entirely of degree, and one exclusively for the decision of the jury; and where a jury, with all the evidence before them, have found a verdict, this court on review will not interfere to disturb their finding, by setting aside the verdict on the ground that there ·was no evidence of neglect.

2. SAME—Master and Servant—Injury to Servant—Burden of Proof—Negligence. Though no one saw how the injury occurred,

yet on the theory that the intestate was inexperienced, the work to be performed dangerous and hazardous, with no means of escape provided, no rope or anything to which the intestate might catch hold to effect an escape from the cement pit in which he had been assigned and placed at work by the master, or give signal of his danger, such negligence on the part of the master having been found by the jury to be the proximate cause of the injury, such finding will not be set aside by this court.

(a) Plaintiff's intestate, an inexperienced laborer, was directed by defendant to go into a large cement pit for the purpose of removing obstructions from a conveyor operated in the bottom thereof. The pit was constructed of cement, being about fourteen feet long, twelve feet wide, twenty feet deep; its walls being smooth and perpendicular. The pit was filled with finely ground or crushed rock, which was conducted therein by means of a chute. Such finely ground or crushed rock accumulated in said pit until the same was removed by the conveyor which operated horizontally at the bottom of said pit, carrying said finely ground rock therefrom. Such rock becoming damp, at times a crust formed on the top, thereby preventing the conveyor from carrying the same out of the pit. In this way large volumes of such finely ground or crushed rock accumulated. It was the custom of the defendant to send laborers into the pit to break said crust so the conveyor would carry off such rock. It is plaintiff's theory that the intestate was inexperienced, and, not having knowledge of the incidental danger, he was lowered into the pit by means of a small rope ladder, and the finely ground or crushed rock crumbled and covered the intestate, thereby smothering him to death; by the exercise of reasonable care the defendant would have known it was dangerous and hazardous to put said intestate in said pit under such circumstances. No means of escape were provided; no ropes or other means of ascent nor any signals were provided. Held, that a verdict, based on the theory that the negligence of the master in failing to provide means of escape, or signals, was the proximate cause of his death, would not be disturbed on review.

3.    TRIAL—Refusal of Instructions. Although some of the instructions requested on the part of the plaintiff in error correctly define the law applicable to the issues in the case, yet, if the subject covered by said instruction was fairly covered in the general charge, no reversible error will operate on account of the refusal of the court to give the same.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Action by Alice M. Blunt against the Dewey Portland Cement Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*B. A. Lewis, A. M. Keene,* and *E. C. Gates,* for plaintiff in error.

*J. P. O'Meara* and *H. H. Montgomery,* for defendant in error.

WILLIAMS, J.   This proceeding in error is to review the action of the trial court in a certain cause wherein defendant in error, the relict of Joel E. Blunt, deceased, as plaintiff, sued the plaintiff in error, as defendant, for damages occasioned by the death of her said husband. The defendant in error will be herein referred to as "plaintiff," the plaintiff in error as "defendant," and Joel E. Blunt, the deceased, as the "intestate."

The intestate at the time of his death, to wit, on or about the 21st day of December, 1909, was an employee of the defendant as a laborer at its cement plant. Under plaintiff's theory of the case he had never worked for said defendant or for any cement company or plant, and had never had any experience in the character of work required of him by defendant, and knew nothing of the instrumentalities used in the performance of such work, and was totally ignorant of the dangers of such work prior to the time that he began his work at the pit on the afternoon of his death. About one o'clock in the afternoon he was directed by defendant to go into a large cement receptacle for the purpose of removing obstructions from a conveyor operated in the bottom of said pit. Said pit was constructed of cement, being about fourteen feet long, twelve feet wide, and about twenty feet deep; its walls being smooth and perpendicular. The pit was used by the defendant as a receptacle for finely ground or crushed rock, which was conducted therein by means of a hopper or chute, or spout. Said finely ground and crushed rock would accumulate in said pit until the same was removed by a con-

veyor, which operated horizontally at the bottom of the pit, carrying such finely ground or crushed rock into other receptacles. By reason of said finely ground or crushed rock becoming damp, it would, at times, form a crust on the top of the volume in said receptacle, thereby preventing the conveyor from carrying the same off. In this way large volumes of such crushed rock accumulated in the pit. It was the custom of the defendant, when it could do so, to induce laborers to go into said pit and break said crust, and cause said conveyor to carry the crushed rock to an adjacent receptacle. To an inexperienced person this character of work was dangerous and hazardous. The intestate, being lowered into said pit by means of a small rope ladder, was suddenly and without warning overwhelmed and covered by said finely · ground and crushed rock and smothered and died. The defendant by the exercise of reasonable care would have known that it was dangerous and hazardous to put said intestate in said pit under the circumstances. No means of escape were provided, neither were any ropes or other means of ascent from said pit, nor any signals, provided in case an accident should happen. By the exercise of ordinary care the defendant could have anticipated the danger and provided against the same. Intestate left surviving him his wife, the plaintiff, and two infant children, Gladys, age five years, and Alma May, two years. Those were his sole and only heirs at law. The defendant answered (1) by way of general denial, (2) contributory negligence, and (3) assumption of risk. The plaintiff replied by general denial.

Defendant insists that there was not sufficient evidence to submit the cause to the jury. The record discloses substantial evidence to support the plaintiff's theory as hereinbefore set out. True, there are substantial conflicts in the evidence on every material matter; but, the jury having determined that question adversely to the contention of the defendant, such finding is conclusive on review here.

Defendant earnestly invokes the rule that "in case of an accident to an employee the fact of accident carries with it no

presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the .accident was the result of the. negligence of the employer." *Neely v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *Solts v. Southwestern Cotton Seed Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191. That this is the general rule cannot be controverted. See, also, to the same effect, *St. Louis & S. F. R. Co. v. Gosnell,* 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892.

But a master is bound to exercise reasonable care and diligence to provide his servant with a reasonably safe place in which to work, with reasonably safe machinery, tools, and implements with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants. When the master has so discharged these duties, then at common law the servant assumes all the risks and hazards incident to the particular employment or to the performance of the particular work, including those risks and hazards resulting from the negligence and carelessness of his fellow servants. *Coalgate v. Hurst,* 25 Okla. 588, 107 Pac. 657; *Id.,* 225 U. S. 698, 32 Sup. Ct. 838, 56 L. Ed. 1262. True, in order for the plaintiff to prevail there must be evidence tending to show primary negligence or a breach of a duty on the part of the defendant. *C., R. I. & P. Ry. Co. v. McIntire,* 29 Okla. 797, 119 Pac. 1008, and authorities cited above.

In 1 Labatt on Master & Servant (1st Ed.) sec. 2, it is said:

"A proposition which has so frequently been enunciated by the court as to have become axiomatic is that, *prima facie,* a servant does not assume any risks which may be obviated by the exercise of reasonable care on the master's part. In other words, the abnormal, unusual, or extraordinary risks which the servant does not assume as being incidental to the work undertaken by him are those which would not have existed if the master had fulfilled his contractual duties."

In section 3 it is also said:

"A second proposition, which is also beyond the reach of controversy, is that every risk which an employment still involves after a master has done everything that he is bound to do for the purpose of securing the safety of his servants is assumed, as a matter of law, by each of these servants. This doctrine prevents recovery unless evidence is introduced which warrants the inference that the injured person was incapable of appreciating the risk from which his injury resulted. According to the standpoint taken, such evidence may be regarded either as tending to show that one of the essential elements of an assumption or acceptance—viz., knowledge—is lacking, or that the master exposed the servant to risks which he did not comprehend, a situation which manifestly implies that the master did not fulfill all his duties. * * * The risks which are thus considered to have been assumed are those which are commonly described as 'ordinary.' When stated with reference to the general rule which throws on the servant the burden of proving negligence on the master's part, * * * this principle assumes the form that, in the absence of definite proof of such negligence, an accident is regarded as one of the hazards of the employment of which the servant takes the risk."

In *Coalgate v. Hurst, supra,* paragraph 2 of the syllabus is as follows:

"While a person entering voluntarily into a contract of service assumes all the risk and hazards ordinarily incident to the employment and such as are liable, to arise from defects which are patent and obvious to a person of his experience and understanding, he does not ordinarily assume risks arising out of negligence of the master. (a) He assumes all the ordinary risks of the employment which are known to him and which would have been known with the exercise of ordinary care to a person of reasonable prudence and diligence in the situation. It is his duty to exercise ordinary care and diligence, and observe and become cognizant of obvious defects in the machinery and working place, and he is chargeable with a knowledge of such risks and defects which would have been known to a person of reasonable prudence and care in his situation."

The defense of assumption of risk was first recognized in this country as a principle involved in the application of the

law of master 'and servant in 1842. The syllabus in that case is as follows:

"Where a master uses due diligence in the· selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable to one of them for an injury received ·by him in consequence of the carelessness of another while both are engaged in the same service. A railroad company employed A., ·who was careful and trusty in his general character, to tend the switches on their road; and after he had been long in their service, they employed B., to run the passenger train of cars on the road; B. knowing the employment and character of A. *Held,* that the company was not answerable to B., for an injury received by him, while running the cars, in consequence of ·the carelessness of A. in the management of the switches." (*Farwell v. Boston & Worcester R. R. Corporation,* 4 Metc. [Mass.] 49, 38 Am. Dec. 339; 2 Bailey on Personal Injuries [2d Ed.] sec. 353, p. 939).

It is declared that by virtue of the implied condition in the contract of service the servant took upon himself the risk attending the performance of the service which he had engaged to perform, including injuries which might befall him from the negligence of his fellow servants.

In *Hayden v. Smithville Mfg. Co.,* 29 Conn. 548, it was held that where it was determined that a servant had knowledge of the circumstances attending the particular employment in entering upon it, he assumed the risk of injury that might befall him while in the service, from the condition by him known to exist. For an exception to the rule, see *Sans Bois Coal Co. v. Janeway,* 22 Okla. 425, 99 Pac. 153; *Ladow v. Oklahoma Gas & Elec. Co.,* 28 Okla. 15, 119 Pac. 250; *Fitzwater v. Warren et al.,* 206 N. Y. 355, 99 N. E. 1042.

In 2 Bailey on Personal Injuries (2d Ed.) sec. 354, at page 940, it is said:

"Courts quite often confuse the questions of contributory negligence and assumed risk, in failing to recognize the distinction between the two which actually exists. It is true that the same defect resulting in injury to a servant may be a risk assumed, and the employee chargeable with contributory negli-

gence in connection with it; yet it is also true that as employee may be entirely free from negligence and at the same time chargeable with an assumption of the risk. Courts quite generally recognize this distinction, though the reason by which the result is reached may be somewhat different. The doctrine of *volenti non fit injuria* stands outside the defense of contributory negligence and is in no way limited by it. In individual instances, the two ideas sometimes seem to cover the same ground, but carelessness is not the same thing as intelligent choice, and the maxim often applies where there has been no carelessness at all. Assumption of risk and contributory negligence are distinct defenses. Contributory negligence is a breach of a legal duty, while assumption of risk is not a duty, but purely voluntary on the part of the servant. The one is a question of conduct, while the other is a question of contract. Thus one may assume the risk and not be guilty of contributory negligence, as where he takes the risk but uses due care to avoid injurious consequence. Assumption of risk and contributory negligence approximate where danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom, but where the danger, although present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, 'one who assumes this risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care commensurate with the risk to avoid injurious consequences.' "

In *Bradburn v. Wabash R. Co.,* 134 Mich. 575, 96 N. W. 929, it is said:

"Did plaintiff's injury result from an assumed risk? The principle which prevents recovery when an employee has assumed the risk should not be confounded—though it sometimes is—with the principle which prevents recovery when he himself is negligent, or when his employer is free from negligence. If the principle of assumed risk—as many seem to suppose—has application only to cases in which the employer would be held free from liability either on the ground that * * * the employee has been guilty of contributory negligence, it must be confessed that it is a principle of no great importance. While it must be conceded that the principle of assumed risk does sometimes furnish an additional ground for declaring the employer free from liability in cases where he is

free from negligence and in cases where the employee is guilty of contributory negligence, that principle is nevertheless a distinct principle, and may be applied in cases in which the employer is negligent and the employee free from contributory negligence. The fact that the principle of assumed risk is sometimes applicable in cases where the employee is guilty of contributory negligence only proves that the three principles—negligence, contributory negligence, and assumed risk—are consistent. It by no means proves their identity. The principle of assumed risk rests upon the ground that it is an implied contract between the employer and the employee that the employee shall assume the risk of all dangers obviously incident to his employment. * * * The employee assumes the risk of all dangers obviously incident to his employment, whether the employer is negligent or free from negligence in exposing him to those dangers. If the employer is not negligent in exposing the employee to those dangers, he is not liable for any injury resulting, for two reasons: (a) He himself is free from negligence; and (b) the employee has assumed the risk. When, however, the injury to the employee results from an assumed risk to which an ordinarily prudent employer would not have exposed him, there can be no recovery; not because the employer was not negligent, for he was negligent, but because the employee assumed the risk. It is equally clear that the principle of assumed risk is not confined in its application to cases in which the employee is guilty of contributory negligence. Cases, of course, often arise in which the employee has assumed a risk which an ordinarily prudent person would not assume; and these, of course, may be disposed of on the double ground of assumed risk and contributory negligence. Cases also arise where the employee has assumed a risk which it was not negligent to assume, and these must be disposed of, not on the ground of contributory negligence, but on the ground of assumed risk."

In this state the doctrine of assumption of risk, as to railroads, street railways, interurban railways, and mining operators has been modified; such employees not assuming the risk incident to the negligence of his fellow servant. Section 254, Williams' Ann. Const. Okla. A modification, in that the defense of assumption of risk in all cases whatsoever is a question of fact at all times to be left to the jury, is ex-

tended to all masters.   Section 355, Williams' Ann. Const. Okla.

Where the master has omitted no duty as such, and therefore is free from negligence, no liability attaches to him, or, in the language of Labatt:

"Every risk which an employment involves after a master has done everything that he is bound to do for the purpose of securing the safety of his servants is assumed as a matter of law by each of the servants."

But when the contention is that the injury to the employee resulted from an assumed risk which an ordinarily prudent employer would not have exposed the servant to, then under sec. 355, Williams' Ann. Const. Okla., *supra,* such defense when interposed by the master is "in all cases whatsoever" to "be a question of fact and shall at all times be left to the jury."

Obviously, where the master has omitted to perform no duty required of him by law, and therefore is guilty of no negligence, no defense of assumption of risk is necessary to be pleaded, though such plea be available.  *Clemens v. St. Louis & S. F. R. Co.,* 35 Okla. 667, 131 Pac. 169.

If the defendant was neither guilty of any willful or intentional injury nor failed to discharge any duty on its part to protect the intestate from injury or to furnish him a reasonably safe place at which to work, or, he being inexperienced, to properly warn him, then there could be no recovery even though the intestate's death was occasioned without any contributory negligence or fault on his part; his death thus resulting in law from an accident.  No liability, under such state of facts, would fall upon the defendant; the injury being a risk incident to the employment, which risk is assumed by the servant.  *Coalgate v. Hurst, supra; Fisher v. Prairie,* 26 Okla. 337, 109 Pac. 514; *C., R. I. & P. Ry. Co. v. McIntire, supra; A., T. & S. F. Ry. Co. v. Moore,* 29 Kan. 632; *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; 1 Labatt on Master & Servant (1904), sec. 14.

Though the master may have been derelict in the performance of some of the duties imposed upon him by law relative to the intestate, being thereby guilty of primary negligence, yet if the intestate knew of such negligence on the part of the defendant at the time he entered the pit, under some circumstances he would assume the risk resulting from the defendant's omission of duty. But that question of fact would be for the jury to determine under proper instructions.

"The question of negligence (of the master) must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such a difference as to the inferences which might fairly be drawn from conceded facts. Where this is the case, the issue must go to the jury, no matter what may be the opinion of the court as to the value of the evidence or the credibility of the witnesses. So, if the issue narrows itself to a distinction between what is reasonably safe and what is not so, the question is emphatically one for the jury. It is for the court to say whether there is any evidence in the case from which negligence might reasonably be inferred; and then it is for the jury to say whether, from the facts thus proved, negligence ought to be inferred." (1 Sherman & Redfield's Law of Negligence [4th Ed.] sec. 54, and authorities cited in footnotes 1, 2, 3, and 4.)

In *Leishman v. London, Brighton & South Coast Railway Co.*, 23 Law Times Rep. 712, decided by the Court of Exchequer, it was held:

"Where the question, whether or not a railway company has been negligent, depends upon the nice distinction between that which is reasonably safe and that which is not so, it is a question entirely of degree, and one exclusively and emphatically for the decision of a jury; and where a jury, with all the evidence before them, have found a verdict, the court will not interfere to disturb their finding by granting a rule to set the verdict aside on the ground that there was no negligence."

See, also, *Ft. Smith & Western Ry. Co. v. Collins*, 26 Okla. 82, 108 Pac. 550; *St. Louis & S. F. R. Co. v. Loftis*,

25 Okla. 496, 106 Pac. 824; *Harris et al. v. M., K. & T. Ry. Co.*, 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; *Sans Bois Coal Co. v. Janeway*, 22 Okla. 425, 99 Pac. 153; *M., K. & T. Ry. Co. v. Shepherd*, 20 Okla. 626, 95 Pac. 243.

Though no one saw how the injury occurred, yet, on the theory that the intestate was inexperienced, the work to be performed dangerous and hazardous, with no means of escape provided, no rope or anything to which the intestate might catch hold to escape from the cement pit, or to give signal of distress, such negligence on the part of the master was the proximate cause of the injury. The jury were justified in so finding from the circumstances disclosed by this record. *Coalgate v. Hurst, supra,* and authorities therein cited.

As to the requested instructions, the refusal to give which is assigned as error, in so far as they appear to correctly state the law, the given instructions fairly and reasonably cover the same. The action of the trial court in this respect is without prejudicial error. *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *Hagerman v. Thatch,* 34 Okla. 772, 127 Pac. 254.

The judgment of the lower court is affirmed.

All the Justices concur.