# CHICAGO, R. I. & P. RY. CO. v. WRIGHT.

### No. 2709.  Opinion Filed August 6, 1913.

### (134 Pac. 427.)

1. **MASTER AND SERVANT—Duties of Master—Safe Appliances.**
It is a nondelegable duty, owing by the employer to the employee, to provide the latter with reasonably safe machinery, tools, and appliances with which to do his work and a reasonably safe place in which to work, taking into consideration the nature and character of the work to be performed and the dangers and hazards ordinarily arising therefrom.

2. **SAME—Injuries to Servant—Safe Appliances—Duty to Repair.**
Equally important with the duty of furnishing reasonably safe appliances and places to work, in the first instance, is that of maintaining them in such condition, and making all necessary repairs thereto, for such duty is a continuing one, rendering the employer liable for negligence for failure so to do; he being held to the exercise of a reasonable diligence in this respect.

3. **SAME—Defective Appliances.**  Where a defective step, by means of which an engineer was accustomed to mount and descend from a railway engine, was twice reported as in need of repairs, and where there was at hand ample opportunity for making the repairs, and which would have required but few minutes actual time, and where, on the day following the making of the second report, the engine, partially repaired, was furnished the engineer for use, and where, at the time he was informed by the hostler delivering the engine that it was all O. K., and sufficient means and opportunity were not furnished the engineer to make a thorough inspection thereof on his own account, and where it further appeared that prior thereto the employer had usually promptly discharged its duty in making needed repairs, so reported to it, and the engineer in going to work, without knowledge of the master's neglect of duty, assumed that the step had been repaired, and whereby, on account of said step not being repaired, the engineer fell therefrom and was severely injured, a verdict for damages against the employer, where the foregoing facts are proven, is sustained by sufficient evidence, and will not be disturbed on appeal.

4. **SAME—Contributory Negligence.**  The fact that the employer may have imposed upon the plaintiff the duty of making a personal inspection of an engine before using it would, if true, and standing alone, and without sufficient excuse for failure to so inspect, constitute contributory negligence; yet, the defense of contributory negligence being a question of fact for the jury, upon that question the employer is concluded by the jury's verdict, as in other cases involving a question of fact.

(Syllabus by Sharp, C.)

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by Charles G. Wright against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *J. H. Woods,* for plaintiff in error.

*W. N. Maben,* for defendant in error.

Opinion by SHARP, C. In a trial in the district court of Pottawatomie county, plaintiff was given a judgment against defendant railway company for $8,000 for personal injuries sustained by the former while in the employ of the latter.

From the evidence it appears that plaintiff was an engineer in the service of the defendant company, and was at the time complained of engaged in running a switch engine in its railway yards at Shawnee. Plaintiff's working hours were from 6:30 p. m. to 5:30 a. m., with an hour off for lunch at midnight. On the night of February 18, 1910, he used engine number 176. On quitting work in the morning it was the custom to make out a written work report, showing, among other things, the repairs needed on the engine in use during the previous night. On the morning of the 19th of February a report was filled out, which is in part as follows:

"Engineer's Work Report. Engine No. 176. Train No. YD. Date 2-19-1910. Repairs needed. Wash boiler; caulk all leaks in fire box. Pack both pistons and grind in both boiler checks. Nuts loose on left pist. pin. Top tank step is split on left side. Left injector won't work. Bad leak in back end of tank."

The company had designated a hook in the register room on which to file engineer's work reports, and where they were filed upon being made out and signed by the engineer. On the night of the 19th the plaintiff again used engine number 176, and on the following morning made out his report, showing the following repairs needed:

"Engine No. 176. Train No. YD. Date 2-20-1910. Repairs needed. Wash boiler. Grind in both boiler checks, and pack

both pistons, and R. valve stem. Pack throttle and grind in main throttle. Valve leaks bad. Key up front end of main rod piston nut. On left Pist. pin. Left injector won't work. Top tank step is broken on left side."

This report was signed by the engineer, and filed in the manner heretofore described. The reports so made out and filed were delivered to the roundhouse foreman for attention.

On the night of the 20th a different engine, number 78, was used; but, on going to work on the night of the 21st, engine 176 was again furnished for service. Plaintiff had not seen this engine from the morning of the 20th until he went to work on the latter evening. When the engine was turned over to him by the hostler, the latter remarked that it was late, somewhere about 6:45, and informed plaintiff that the engine was all O. K. Both while the engine was on the turntable, and while being coaled, in order to save delay, plaintiff, aided by the light of a torch, oiled the drivers and boxes of the engine. After taking charge of the engine, he walked around it from the left to the right side, looking at the front end of the main rod key to see if it had been keyed up to meet his last report, and while so doing noticed that some one, either the engineer on the day shift or the roundhouse employees, had been hammering on the key. Plaintiff, according to his recollection, then got upon the engine from the right-hand side, blew the whistle for the switchman, and, after the fireman had mounted, it was backed from the roundhouse lead to the shop lead, and headed east down the latter lead to the water crane, where water was taken. From there the engine was backed up three or four rails length on a cut-off that led to the main line track, where a freight train was standing. Plaintiff again lit his torch, and set the feeds to the lubricator. About the time this work was finished, the torch, being leaky and in bad condition, went out. The 7:15 passenger train was then due; but, on account of the main line track being blocked by the freight train, the switch engine under plaintiff's charge could not get up to the depot to work the passenger train. While waiting alongside the freight for it to clear, it occurred to plaintiff that he had not opened up his sand pipes, which it

appears had not been in good working condition. Picking up a small money-wrench in one hand, plaintiff started to get off the engine, catching hold of the railing and stepping with one foot on the defective step; when the other foot was raised, and his weight thrown on said step, by reason of its defective condition his foot gave way and slipped down, and his heel hung in the step, and he was thrown to the ground, falling on the main line, a distance of about four or five feet, between two cars of the main line freight train. At this juncture the freight train was set in motion, and before plaintiff could extricate himself from his perilous position, the wheel or wheels of one of the cars ran over one of his hands, necessitating its amputation. The night was dark, and plaintiff had no light; the oil in his torch having all leaked out.

It was shown by the testimony that the defendant company had at the time a number of employees in its shops whose duty it was to inspect and make repairs on engines and other railway equipment. The tank step complained of was about eighteen inches long and six inches wide, and one inch thick, the foot thereof being of oak, securely strapped and bolted at the front and to the side of the tank, back of the engine cab. This step was split; about half of it being entirely gone. Neither the engineer nor Burnett, the fireman, had noticed on the night in question that the step had not been repaired. There was evidence tending to show that it would have taken about ten minutes in which to make the necessary repairs to the step. On behalf of plaintiff, in addition to the testimony of the two physicians, the following witnesses testified: Charley Bethel, hostler, who turned over the engine to plaintiff on the night of the accident; Gordon G. Skelton, and J. H. Douglas, fireman and engineer, respectively, using said engine on the day shift; and Frank E. Burnett, and plaintiff, fireman and engineer, respectively, of the engine at the time of the accident.

At the conclusion of plaintiff's testimony, defendant demurred to the evidence, which demurrer was overruled. No evidence was offered on the part of the defendant, and a peremptory instruction to direct a verdict for defendant was asked and over-

ruled. While numerous errors are assigned, but two are argued in the brief, and it will be necessary, therefore, only to consider the question of the sufficiency of the evidence to sustain the verdict.

The master is bound to provide his servants with a reasonably safe place in which to work, with reasonably safe machinery, tools, and appliances with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants. When the master has so discharged these duties, then at common law the servant assumes all the risks and hazards incident to the particular employment or to the performance of the particular work, including those risks and hazards resulting from 'the negligence and carelessness of his fellow servants. *Neely v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320; *Coalgate Co. v. Hurst,* 25 Okla. 588, 107 Pac. 657; *Choctaw Electric Co. v. Clark,* 28 Okla. 399, 114 Pac. 730; *Frederick Cotton Oil Co. v. Traver,* 36 Okla. 717, 129 Pac. 747; *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659; *Chicago, Rock Island & Pacific Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876.

By our organic law (article 9, sec. 36, Williams' Ann. Const. Okla.) the common-law doctrine of fellow servants, so far as it affects the liability of the master for injuries to his servant, resulting from acts or omissions of any other servant or servants of the common master, has been abrogated as to all employees of railroad companies and other companies therein named.

Equally important with the duty of furnishing reasonably safe and suitable appliances in the first instance is that of maintaining them in a reasonably safe condition and making all necessary repairs, for such duty is a continuing one, rendering the master liable for failure so to do. *Jager v. California Bridge Co.,* 104 Cal. 542, 38 Pac. 413; *Wells et al. v. Coe,* 9 Colo. 159, 11 Pac. 50; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215; *Shebeck v. National Cracker Co.,* 120 Iowa, 414, 94 N. W. 930; *Solomon R. Co. v. Jones,* 30 Kan. 601, 2 Pac. 657; *Atchison, T. & S. F. Ry. Co. v. Napole,* 55

Kan. 401, 40 Pac. 669; *O'Mellia v. Kansas City, St. J. & C. B. R. Co.*, 115 Mo. 205, 21 S. W. 503; *Miller v. Great North-ern R. Co.*, 85 Minn. 272, 88 N. W. 758. So that the liability of defendant did not terminate upon its furnishing to the plaintiff in a safe condition the engine upon which he was employed; but it was its further and equally positive duty to keep said engine in a reasonably safe condition. To constitute actionable negligence, unless the injury be willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure. *Chicago, R. I. & P. Ry. Co. v. McIntire,* 29 Okla. 797, 119 Pac. 1008; *Chicago, R. I. & P. Ry. Co. v. Duran, supra.*

A servant has the right to assume, in the absence of knowledge to the contrary, that the master has discharged its duty in providing and maintaining reasonably safe and suitable machinery, and hence is under no. obligation to inspect the machinery for latent defects. *Little Rock, M. R. & T. R. Co. v. Leverett,* 48 Ark. 333, 3 S. W. 50, 3 Am. St. Rep. 230; *Monmouth Min. & Mfg. Co. v. Erling,* 148 Ill. 521, 36 N. E. 117, 39 Am. St. Rep. 187; *Louisville, N. A. & C. R. Co. v. Buck,* 116 Ind. 566, 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883; *Clay City Lbr. & Stove Co. v. Noe,* 76 S. W. 195, 25 Ky. Law Rep. 668; *Franklin v. Missouri, K. & T. R. Co.,* 97 Mo. App. 473, 71 S. W. 540; *Guthrie v. L. & N. R. Co.,* 79 Tenn. (11 Lea) 372, 47 Am. Rep. 286; *Galveston, H. & S. A. R. Co. v. Smith,* 24 Tex. Civ. App. 127, 57 S. W. 999.

By the common and ordinary use of railroad locomotives, it is a matter of common knowledge that there are, either upon said locomotive or the tank coupled therewith, steps used by the operatives in getting upon and descending from the locomotive. These steps are not only a convenience, but a necessary adjunct of the engine itself, and discharge an important function in the way of protecting the employees from dangers attending them in the discharge of their duties. Before an employer can be charged with negligence in failing to keep his appliances in safe

and suitable condition, he is entitled to actual or constructive notice of the want of repairs, and a reasonable opportunity to make them. *United States Rolling Stock Co. v. Weir*, 96 Ala. 396, 11 South. 436; *Seaboard Mfg. Co. v. Woodson*, 98 Ala. 378, 11 South. 733; *Kerrigan v. Chicago, etc., Ry. Co.*, 86 Minn. 407, 90 N. W. 976; *Pavey v. St. Louis & S. F. R. Co.*, 85 Mo. App. 218. Applying the foregoing rules to the facts presented, we find that the top step on the left side of the tank to the rear of the cab was split almost in two; the outer half being gone. This step as originally constructed was eighteen inches long, six or eight inches wide, and one inch thick. Its defective condition had been called to the attention of the plaintiff and fireman, Burnett, by the day crew, and on the morning of February 19th was reported in writing to the roundhouse foreman. On the morning following a similar report as to its defective condition was again made. It does not appear that any effort to repair was made, although ample opportunity had been afforded. So that there exists the three elements necessary to constitute actionable negligence, to which attention has already been called, namely: (1) A duty owing; (2) a violation of that duty; (3) injury resulting on account thereof. We say that all three of the elements of actionable negligence and consequent liability exist, for it is obvious that defendant's neglect to repair the defective step was the direct and proximate cause of the plaintiff's injury.

The primary negligence of the defendant being established, what is there in the evidence that would tend to release the railroad company of liability? Defendant company, in its answer, after denying generally the allegations contained in the plaintiff's petition, further alleged nonliability because: (1) The injury was not the proximate result of defendant's negligence; (2) contributory negligence; (3) assumed risk. Considered apart from the other defenses, there can be no doubt that the accident was the proximate result of defendant's negligence. When the plaintiff rested his weight on the defective step in the act of alighting from the engine, his foot slipped, and he was thrown between the cars, then in the act of starting, but theretofore standing still, on an adjoining track. Had the step been in

proper repair, either the accident would not have happened, or no liability on account thereof would have attached. There was no independent or intervening agency contributing in any way to the unfortunate accident, and it was of such a nature as might have reasonably been foreseen by the master as a probable result of its neglect to repair. *Chicago, R. I. & P. Ry. Co. v. Moore,* 36 Okla. 450, 129 Pac. 67.

Upon the remaining defenses, those of contributory negligence and assumed risk, questions of fact for the jury were presented. *Coalgate Co. v. Hurst, supra; Chicago, R. I. & P. Ry. Co. v. Beatty,* 27 Okla. 844, 116 Pac. 171; *Hughes v. Chicago, R. I. & P. Ry. Co.,* 35 Okla. 482, 130 Pac. 591; *Chicago, R. I. & P. Ry. Co. v. Hill,* 36 Okla. 540, 129 Pac. 13; *Chicago, R. I. & P. Ry. Co. v. Baroni,* 32 Okla. 540, 122 Pac. 926; *Frederick Cotton Oil Co. v. Traver, supra; Dewey Portland Cement Co. v. Blunt, supra; Chicago, R. I. & P. Ry. Co. v. Duran, supra.* Is the verdict of the jury in favor of plaintiff sustained by the evidence, or does the evidence adduced by plaintiff's witnesses exculpate the defendant of its otherwise liability? Plaintiff had not seen the engine from the time that he quit work and made out his engine report on the morning of the 20th until it was turned over to him by the hostler in the yards about 6:30 o'clock on the evening of the following day. On the evening of the accident he had not noticed the step, though it appears he made a casual examination of some of the working parts of the engine. The first work that plaintiff did on the engine that evening was to oil the drivers and boxes, aided by a lighted torch. This torch, it was shown, would not hold oil sufficient to enable plaintiff to oil entirely around the engine. Upon setting the lubricator feeds, after the engine had moved upon the cut-off lead, the torch went out. From the fact that it was shown to be a cloudy night, and dark at the time, it may fairly be inferred that when plaintiff put his foot on the defective step he did not know its condition, nor could he, by the use of ordinary care with the means furnished him, have discovered that it had not been repaired.

Where the master has omitted no duty as such, and therefore is free from negligence, no liability attaches to him, as every

risk which the employment involves, after a master has done everything that he is bound to do for the purpose of securing the safety of his servant, is assumed, as a matter of law, by the servant. *Chicago, R. I. & P. Ry. Co. v. Duran, supra; Chicago, R. I. & P. Ry. Co. v. McIntire, supra.* But the doctrine of assumption of risk applies only to known dangers, or those which are so obvious as to be readily perceived, as defined in *Coalgate Company v. Hurst, supra,* and *Dewey Portland Cement Co. v. Blunt, supra.* A servant assumes only the ordinary risks incident to the employment, and not the unusual, exceptional, and extraordinary risks and dangers. The master's negligence, of which the servant is in ignorance, or not properly chargeable with knowledge thereof, is a risk not assumed by the latter. The plaintiff had discovered and twice reported the defective step. It had been the practice of the company to promptly repair defects reported by him. Knowledge was thus brought home to the company, and there had been ample opportunity to make the necessary repairs. On the night following the making of the second report a different engine was furnished plaintiff to use, and when plaintiff took charge of the engine on the evening of the 21st he was informed by the hostler that it was all O. K. Notwithstanding this he made a casual inspection of the engine, and although it was dark, and it was complained that he was getting out late to work the evening passenger train, yet an inspection of the working parts of the engine was made. It is insisted here that there was a violation by plaintiff of the company's rules, requiring him to inspect his engine before going to work. We may concede, without affecting our conclusions, that it is very generally held that disobedience of the reasonable rules and orders of the employer, of which the servant has notice, and which are then in force, when the proximate cause of the injury, constitutes contributory negligence. Shearman & Redfield on the Law of Negligence (6th Ed.) sec. 2076; Thompson on Negligence, sec. 5395 *et seq.;* Elliott on Railroads (2d Ed.) secs. 1313, 1314.

Upon cross-examination the defendant endeavored to prove that the first duty of the engineer was to inspect his engine.

Prudence would perhaps require that such an inspection be made; · but it does not necessarily follow that an inspection must be made, where a given defect has been reported, and where the practice has been to make prompt repairs, especially at a point where there are at hand large repair and machine shops, and where the engineer upon going to work had been assured by the hostler, delivering the engine, that it was all right, and where full opportunity for an inspection may not be afforded on account of darkness, and where an insufficient light is provided, and the time for inspection is limited. Under all the facts disclosed by the evidence, it was a question of fact for the jury to say whether plaintiff was guilty of contributory negligence. It is a rule very generally recognized that, where a master has knowledge of a defect, and promises to repair it, the servant may rely thereon and continue to use the appliance for a reasonable time, without assuming the risk of being guilty of contributory negligence in so doing, providing the danger is not so imminent that a reasonably prudent man would not continue to work therewith. *Ray v. Diamond State Steel Co.,* 2 Pennewill (Del.) 525, 47 Atl. 1017; *Taylor v. Felsing,* 164 Ill. 331, 45 N. E. 161; *McFarlan Carriage Co. v. Potter,* 153 Ind. 107, 53 N. E. 465; *Dempsey v. Sawyer,* 95 Me. 295, 49 Atl. 1035; *Taylor v. Nevada-Calif.-Ore. R. Co.,* 26 Nev. 415, 69 Pac. 858; *Stephenson v. Duncan,* 73 Wis. 404, 41 N. W. 337, 9 Am. St. Rep. 806. The promises need not be in direct words; but it is sufficient if it may fairly be inferred. *Nash v. Dowling,* 93 Mo. App. 156. In the latter case it did not appear that any promise in direct words was made to the plaintiff to remedy the defect; but it was said that this was not necessary, if it sufficiently appeared that the foreman and the defendant Cavanaugh in substance did convey the idea that other appliances would be furnished, and that the plaintiff, relying thereon, continued his service.

Where the facts are such as to warrant a belief that the defects will be remedied, is considered in *Indianapolis & St. Louis Ry. Co. v. Watson,* 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. Rep. 578, where it is said, after referring to the

case of *Patterson v. Pittsburg & C. Railroad Co.,* 76 Pa. 389, 18 Am. Rep. 312:

"We are referred to Dr. Wharton's statement that 'in this country the exception has been still further extended, and we have gone so far as to hold that a servant does not, by remaining in his master's employ, with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them, in such a way as to induce a confidence that they will be remedied.' Wharton on Negligence (1st Ed.) sec. 221. If it were conceded that this is a correct statement of the law, still it would not supply a premise for the conclusion that an objection or protest exempts the servant from the general rule that he assumes the risk, for it is implied that something must be done by the master to induce the belief that the defect will be remedied, and it is difficult to conceive what other thing than a promise, express or implied, can be regarded as sufficient to induce such a belief. We find, on examining the later edition of Dr. Wharton's book, that he adds to what is copied from the earlier edition by counsel these words: 'Such confidence being based on the master's engagements, either express or implied,' and modifies the statement in other respects. Wharton on Negligence (2d Ed.) sec. 220. This author is, indeed, inclined to condemn the exception to the general rule, even as he states it, for he says: 'The only ground on which the exception before us can be justified is that in the ordinary course of events the employee, supposing the employer has righted matters, goes on with his work without noticing the continuance of the defect. But this reasoning does not apply, as we have seen, to cases where the employee sees that the defect has not been remedied, and yet intelligently and deliberately continues to expose himself to it.' Wharton on Negligence (2d Ed.) sec. 220. The rule which we regard as sound in principle and supported by authority may be thus expressed: The employee who continues in the service of his employer, after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception"—citing authorities.

The very purpose of making the daily reports was that repairs could be promptly made. These repairs in part were made, and the plaintiff upon going to work, under all the facts and circumstances shown by the evidence, had the right to rely upon

the belief, induced by the master's past course of dealing, that the latter had discharged its duty. *Morton v. Zwierzykowski,* 91 Ill. App. 462; *Nord Deutscher-Lloyd Steamship Co. v. Ingebregten,* 57 N. J. Law, 400, 31 Atl. 619, 51 Am. St. Rep. 604.

At common law it has been held a question of fact for the jury to determine, under all the circumstances of the case, whether upon continuing in the use of the defective machinery, after notice to the master and a promise to repair, the injured party was guilty of contributory negligence. *Missouri Furnace Co. v. Abend,* 107 Ill. 44, 47 Am. Rep. 425; *Greenleaf, Adm'r, v. Dubuque & S. C. R. Co.,* 33 Iowa, 52; *Osborne v. Alabama, S. & W. Co.,* 135 Ala. 571, 33 South. 687; *Snow v. Housatonic Ry. Co.,* 8 Allen (Mass.) 441, 85 Am. Dec. 720; *Pauck v. St. L. Dressed Beef Co.,* 159 Mo. 467, 61 S. W. 806; *Settle v. St. L. &. S. F. R. Co.,* 127 Mo. 336, 30 S. W. 125, 48 Am. St. Rep. 633; *Wuotilla v. Duluth Lumber Co.,* 37 Minn. 153, 33 N. W. 551, 5 Am. St. Rep. 832; *Kerrigan v. Chicago, M. & St. P. R. Co.,* 86 Minn. 407, 90 N. W. 976; *Patterson v. Pittsburg & C. R. Co.,* 76 Pac. 389, 18 Am. Rep. 312; *Lanning v. New York Cent. R. Co.,* 49 N. Y. 521, 10 Am. Rep. 417; *Manufacturing Co. v. Morrisey,* 40 Ohio St. 148, 48 Am. Rep. 669; *Farley v. Charleston Basket & Veneer Co.,* 51 S. C. 222, 28 S. E. 193; *International & G. N. Ry. Co. v. Williams,* 82 Tex. 342, 18 S. W. 700.

The rule that the question is one of fact for the jury is perhaps nowhere more ably discussed than in *Hough v. Texas & Pacific R. Co.,* 100 U. S. 215, 25 L. Ed. 612, where Justice Harlan, in the syllabus, enunciates the doctrine in the language following:

"If the servant, having knowledge of a defect in machinery, gives notice thereof to the proper officer, and is promised that such defect shall be remedied, his subsequent use of the machinery, in the belief, well grounded, that it will be put in proper condition within a reasonable time, does not, necessarily, or as a matter of law, make him guilty of contributory negligence. It is for the jury to say whether he was in the exercise of due care, in relying upon such promise, and in using the machinery, after knowledge of its defective or insufficient condition. The burden

of proof in such a case is upon the company to show contributory negligence."

With us, by organic law, the defense, both of assumption of risk and contributory negligence, is a question of fact, at all times to be left to the jury. In our opinion, the company's liability was clearly established. Its palpable negligence was the direct and proximate cause of the injury. It has not attempted to explain its failure to repair, or to deny one word of the plaintiff's evidence. The defense interposed involved a determination of questions of fact, which have been, and we think properly, resolved by the jury in favor of the plaintiff.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.